UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

GARY STEVE SEIBER,                    )
                                      )
              Plaintiff,              )
                                      )
v.                                    )        No.:   3:11-CV-108
                                      )               (VARLAN/SHIRLEY)
ANDERSON COUNTY, *et al.*,            )
                                      )
              Defendants.             )

## MEMORANDUM OPINION AND ORDER

This civil action is before the Court on the motions to dismiss the amended complaint

[Docs. 3, 11, 27] and the motions to dismiss the second amended complaint [Docs. 27, 38,

40], pursuant to Rules 12 and 15 of the Federal Rules of Civil Procedure and submitted on

behalf of defendants Advanced Correction Healthcare, Inc. ("ACH"), Charles Townsend,

M.D. ("Dr. Townsend"), and Mary Lacy, L.P.N. ("Nurse Lacy"). Also before the Court is

the motion to dismiss plaintiff's state law claims in the amended complaint [Doc. 13] and the

motion to dismiss plaintiff's state law claims in the second amended complaint [Doc. 45],[1]

pursuant to Rule 12 of the Federal Rules of Civil Procedure and submitted on behalf of

Myron Iwanski, Anderson County Mayor ("Mayor Iwanski"), Sheriff Paul White ("Sheriff

White"), J. Lynn Poluga ("Ms. Poluga"), and Anderson County, Tennessee ("Anderson

---

[1]Sheriff White filed a separate motion to dismiss [Doc. 51]. In response to defendant Sheriff White's motion to dismiss, plaintiff filed a notice of no opposition [Doc. 56]. In light of the lack of opposition, defendant Sheriff White's motion to dismiss is **GRANTED** and plaintiff's claims against him are dismissed.

County"). Plaintiff, Gary Steve Seiber, responded in opposition to the motions to dismiss the amended and second amended complaints [Docs. 16, 17, 18, 42, 55, 58, 59, 60, 61]. Defendant Nurse Lacy filed a reply to her motion to dismiss the amended complaint [Doc. 22].

For the reasons set forth herein, and after considering the relevant law, the arguments of the parties, and the allegations and claims in plaintiff's second amended complaint, the Court will **DENY as moot** defendants' motions to dismiss pertaining to the amended complaint [Docs. 3, 11, 27], **GRANT** the motion to dismiss plaintiff's state law claims in the second amended complaint of defendants Mayor Iwanski, Sheriff White, Ms. Poluga, and Anderson County [Doc. 45], **GRANT** the motion to dismiss the second amended complaint [Doc. 38] of defendant ACH, and **GRANT in part** and **DENY in part** the motion to dismiss the second amended complaint of defendants Nurse Lacy and Dr. Townsend [Doc. 40].

## I.     Facts[2]

Beginning around September 2009, the initial plaintiff, Mitchell Seiver ("Seiver"), was incarcerated in the Anderson County detention facility [Doc. 71, ¶ 10]. Around September 23, 2009, Seiver was evaluated by the detention facility's medical staff, including defendant Nurse Lacy, Nurse Jane Doe I, and Nurse Practitioner Jane Doe II, employees of defendant ACH, for a growth on his right heel that resembled a wart and a lesion on his right

---

[2]The Court will take plaintiff's factual allegations as true for purposes of these motions to dismiss. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (noting that, "when ruling on a defendant's motion to dismiss, a judge must accept as true all the factual allegations contained in the complaint") (citations omitted).

groin [*Id.*, ¶ 15]. The medical staff instructed Seiver to notify the staff or the detention facility if either the growth or the lesion worsened or changed [*Id.*]. By July 2010, the growth had increased to the size of a small apple and was causing Seiver excruciating pain [*Id.*, ¶ 16]. Seiver's right leg had also swelled and the lesion on his groin was emitting a foul, discolored, and smelly substance [*Id.*, ¶ 17].

Seiver made several verbal and written requests for medical treatment to the medical staff and the officers at the detention facility [*Id.*, ¶ 18]. Plaintiff alleges that these requests were either summarily denied or responded to with disdain [*Id.*]. The medical staff, including defendant Nurse Lacy, offered Seiver antibiotic ointment and bandages, but refused to provide him with a medical evaluation by a doctor because they deemed his condition "not life threatening" [*Id.*, ¶ 19]. Around May 2010, Seiver was allowed to see defendant Dr. Townsend, an employee of defendant ACH, who offered Seiver prescription antibiotics and recommended that he see a surgeon for removal of the growth [*Id.*, ¶ 20]. Despite this recommendation, the medical staff did not give Seiver the opportunity to see a surgeon [*Id.*, ¶ 21]. Seiver made multiple requests, both verbal and in writing, for authorization to call his attorney in order to procure medical treatment [*Id.*, ¶ 23]. Seiver's requests were denied and defendants were "actively disdainful" in refusing to provide Seiver with adequate treatment [*Id.*, ¶¶ 24, 25].

Around August 2010, Seiver was allowed to see a podiatrist [*Id.*, ¶ 27]. The podiatrist diagnosed the growth on Seiver's foot as a tumor, removed it, and recommended additional testing [*Id.*, ¶ 28]. The growth was determined to be cancerous and Seiver was diagnosed

3

with stage four metastic melanoma [*Id.*, ¶ 29]. After the diagnosis, defendants Nurse Lacy and Dr. Townsend sent two letters to Anderson County's pre-trial release office stating that Seiver's life expectancy could be very short and that his release would save the county money [*Id.*, ¶ 30]. Thereafter, Sevier was granted pre-trial release [*Id.*]. After his release, Seiver began receiving cancer treatment [*Id.*, ¶ 31]. Seiver died from cancer on May 11, 2011 [*Id.*, ¶ 34].

Prior to his death, Seiver filed the initial complaint and the amended complaint in state court against defendants Nurse Lacy, ACH, Mayor Iwanski, Sheriff White, Ms. Poluga, Anderson County, Dr. Townsend, the State of Tennessee, Nurse Jane Doe I, and Nurse Practitioner Jane Doe II, alleging deprivation of his due process rights and cruel and unusual punishment in violation of 42 U.S.C. § 1983 and the Eighth and Fourteenth Amendments to the United States Constitution, along with claims for negligent/deliberate indifference, willful and wanton disregard, violations of the Tennessee Governmental Tort Liability Act (the "GTLA"), and negligent and intentional infliction of emotional distress [Doc. 1, Exs. B, C]. Defendant Nurse Lacy removed the case to this Court. Defendants Nurse Lacy, ACH, Mayor Iwanski, Sheriff White, Ms. Poluga, Anderson County, and Dr. Townsend each filed their respective motions to dismiss [Docs. 3, 11, 13, 27].[3]

---

[3]Defendant the State of Tennessee also filed a motion to dismiss [Doc. 20]. In response, plaintiff filed a notice of voluntary dismissal of his claims against the State of Tennessee [Doc. 23]. Thus, the Court denied as moot the motion to dismiss submitted by the State of Tennessee and dismissed plaintiff's claims against this defendant [Doc. 24].

4

In June 2011, counsel for Seiver filed a notice of death [Doc. 26] and in July 2011, filed a motion to amend the amended complaint [Doc. 31]. The magistrate judge granted the motion to amend [Doc. 36], permitting plaintiff to be substituted for Seiver as the plaintiff in this action and permitting the filing of the second amended complaint. The second amended complaint adds medical malpractice/wrongful death claims against defendants Dr. Townsend and Nurse Lacy [Docs. 37, 71]. Defendants then filed the motions to dismiss in regard to the second amended complaint [Docs. 38, 40, 45].[4] Plaintiff has responded in opposition to each motion to dismiss [Docs. 55, 58, 59, 60, 61].[5]

## II.    Standard of Review

Federal Rule of Civil Procedure 8(a)(2) sets out a liberal pleading standard, requiring only "'a short and plain statement of the claim showing that the pleader is entitled to relief,'" in order to "'give the [opposing party] fair notice of what the . . . claim is and the grounds upon which it rests.'" *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); *Smith v. City of Salem, Ohio*, 378 F.3d 566, 576 n.1 (6th Cir. 2004). "[D]etermining whether a complaint states a plausible claim is context-specific requiring the reviewing court to draw on its experience and common sense."

---

[4]In the memorandums in support of the motions to dismiss in regard to the second amended complaint, defendants incorporate the arguments made in the motions to dismiss the amended complaint. Accordingly, in light of the filing of the second amended complaint and the motions to dismiss that pleading, defendants' motions to dismiss in regard to the amended complaint [Docs. 3, 11, 13, 27] will be **DENIED as moot**.

[5]In these responses to the motions to dismiss in regard to the second amended complaint, plaintiff also adopts and incorporates his arguments made in his response briefs for the motions to dismiss in regard to the amended complaint.

5

*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

A party may move to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure Rule 12(b)(6). In order to survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, a complaint must contain allegations supporting all material elements of the claims. *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 519 (6th Cir. 2008). In determining whether to grant a motion to dismiss, all well-pleaded allegations must be taken as true and must be construed most favorably toward the non-movant. *Trzebuckowski v. City of Cleveland*, 319 F.3d 853, 855 (6th Cir. 2003). Detailed factual allegations are not required, but a party's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555. Nor will an "unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S. Ct. at 1937. Rather, a pleading must "contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory." *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436-37 (6th Cir. 1988) (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).

## III. Analysis

In their respective motions to dismiss, defendants Nurse Lacy, Dr. Townsend, and ACH argue that plaintiff has failed to state claims against them for a violation of Seiver's

6

constitutional rights under § 1983 for deliberate indifference and based on violations of the Eighth and Fourteenth Amendment.

In an argument joined by Mayor Iwanski, Ms. Poluga, and Anderson County, defendants Nurse Lacy, Dr. Townsend, and ACH also argue that plaintiff's state law claims should be dismissed for failure to state claims upon which relief may be granted because these claims sound in medical malpractice and plaintiff has failed to comply with the statutory procedures laid out in the Tennessee Medical Malpractice Act (the "TMMA"), Tenn. Code Ann. §§ 29-26-101, *et seq.*, for filing a medical malpractice claim. Defendants Mayor Iwanski, Ms. Poluga, and Anderson County have not moved for dismissal of plaintiff's deliberate indifference claim.

### A.    Constitutional Claim for Deliberate Indifference

Plaintiff claims that defendants violated his rights under the Eighth and Fourteenth Amendments by failing to provide him adequate medical care. These alleged violations of constitutional rights are actionable under § 1983. Section 1983 establishes a "cause of action for deprivation under color of state law, of any rights, privileges or immunities secured by the Constitution or laws of the United States." *Horn by Parks v. Madison Cnty. Fiscal Court*, 22 F.3d 653, 656 (6th Cir. 1994). To state a claim under § 1983, "a plaintiff must set forth facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law." *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009) (quoting *Sigley v. City of Parma Heights*, 437 F.3d 527, 533 (6th Cir. 2006)).

7

In the instant case, plaintiff contends that as a pretrial detainee, Seiver was subjected to cruel and unusual punishment in violation of the Eighth Amendment, that defendants exhibited deliberate indifference towards Seiver and his medical needs in violation of § 1983, and that defendants' conduct constitutes a violation of Seiver's constitutional rights to due process under the Fourteenth Amendment.

"The Eighth Amendment forbids prison officials from 'unnecessarily and wantonly inflicting plain' on an inmate by acting with 'deliberate indifference' towards the inmate's serious medical needs." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). Seiver, as a pretrial detainee at the Anderson County detention facility, is "analogously protected under the Due Process Clause of the Fourteenth Amendment." *Id.* (citing *Bell v. Wolfish*, 441 U.S. 520, 545 (1979)). A § 1983 claim that asserts "[a] constitutional [violation] for denial of medical care has objective and subjective components." *Id.* (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). The objective component requires the existence of a "sufficiently serious" medical need. *Farmer*, 511 U.S. at 834. "The subjective element requires an inmate to show that prison officials have 'a sufficiently culpable state of mind in denying medical care.'" *Blackmore*, 390 F.3d at 895 (quoting *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000)). Officials have a sufficiently culpable state of mind where officials act with "deliberate indifference" to a serious medical need. *Farmer*, 511 U.S. at 834 (citations omitted).

8

### 1.    A "Sufficiently Serious" Medical Need

Whether the alleged deprivation suffered by an inmate is objectively "sufficiently serious" requires "the inmate . . . [to] show that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834.  In addition, a serious medical need has been defined as "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008) (citations omitted)

In this case, plaintiff alleges that over a period of roughly nine months, the growth on Seiver's foot had grown to the size of a small apple, that Seiver was unable to put any weight on it, that Seiver's right leg was swollen, and that the lesion on Seiver's groin was emitting a foul smelling substance.  Plaintiff alleges further that Seiver was ultimately diagnosed with stage four metastic melanoma and died as a result of his illness.  Upon review, the Court determines that these allegations are sufficient to establish the objective element of a "sufficiently serious" medical need because plaintiff has alleged the existence of a serious medical condition suffered by Seiver, because Seiver was diagnosed with melanoma, and because he ultimately died as a result of that disease.  The central issue, therefore, is whether plaintiff has alleged sufficient evidence regarding the subjective component of the deliberate indifference claim.  That is, whether each defendant acted with deliberate indifference toward Seiver's serious medical need.

## 2. Deliberate Indifference to a Serious Medical Need

In addition to the objective, "sufficiently serious" prong discussed above, an individual asserting a claim under § 1983 must also set forth factual allegations sufficient to satisfy the subjective, "deliberate indifference" component. This subjective requirement "is meant to prevent the constitutionalization of medical malpractice claims[.]" *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001). Thus, this factor requires a plaintiff to demonstrate that the official "subjectively perceived a risk of harm and then disregarded it[.]" *Id.* However, in order to satisfy this component, "an Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of harm." *Farmer*, 511 U.S. at 842. The United States Supreme Court has defined "deliberate indifference" as being more than mere negligence but less than acting with purpose or knowledge. *Id.* at 835. Rather, the prison official must have acted with a state of mind similar to recklessness. *Id.* at 836. Thus, to prove the required level of culpability, a plaintiff must show that the official subjectively knew of a risk to the inmate's health, drew the inference that a substantial risk of harm to the inmate existed, and consciously disregarded that risk. *See id.* at 837, 839; *see also Cooper v. Cnty. of Washtenaw*, 222 F. App'x 459, 465, 466 (6th Cir. 2007); *Brooks v. Celeste*, 39 F.3d 125, 128 (6th Cir. 1994).

10

### a. Defendants Nurse Lacy and Dr. Townsend

As previously discussed, plaintiff has alleged that defendant Nurse Lacy knew of Seiver's medical condition—namely, the growth on his foot and the lesion on his groin—yet refused to provide Seiver with adequate treatment or a medical evaluation "for months" because she, along with other unidentified medical staff, deemed his condition not life threatening. Plaintiff has also alleged that defendant Dr. Townsend knew of Seiver's medical condition, that the doctor mis-diagnosed the growth and only offered Seiver prescription antibiotics, failed to draw a connection between the growth and the lesion, and recommended that Seiver see a surgeon to remove the growth but failed to recommend that Seiver see an oncologist. Plaintiff alleges further that both defendants were actively disdainful towards Seiver and that both were aware of the enlarging growth and the seeping lesion, yet took no action to treat these conditions, despite Seiver's repeated requests. Last, plaintiff alleges that both defendants Nurse Lacy and Dr. Townsend sent letters to the pre-trial release office after Seiver was diagnosed with cancer, such letters stating that Seiver's life expectancy was very short and that his release would save the county money.

Defendants Nurse Lacy and Dr. Townsend contend these allegations are insufficient to establish the subjective component of plaintiff's deliberate indifference claim because the United States Court of Appeals for the Sixth Circuit distinguishes between cases where the plaintiff alleges a complete denial of medical care and cases, such as this, where the plaintiff alleges that he has received inadequate medical treatment [Doc. 22, p. 5 (citing *Robinson v. Caruso*, No. 08-14069, 2010 WL 1257497 (E.D. Mich. Mar. 29, 2010))]. Defendants also

contend that in cases where an inmate alleges a claim for deliberate indifference, but the record demonstrates that the inmate received medical attention and is filing a suit because he disagrees with treatment decisions made by the medical staff, the inmate has failed to state a claim [Doc. 22, p. 5 (citing *Smith v. Campbell*, No. 10-CV-10700, 2010 WL 3385300 (E.D. Mich. Aug. 11, 2010) (citing *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976)))]. Thus, defendants argue, because the allegations in plaintiff's second amended complaint show that Seiver was examined and received medical treatment from both defendants on multiple occasions, plaintiff's claim is, in essence, a claim arising out of a disagreement with defendants' treatment decisions. Thus, under Sixth Circuit law, defendants contend that plaintiff has failed to state a claim for deliberate indifference.[6]

The Court has reviewed the cases referenced by defendants, and agrees that these cases, considering what constitutes sufficient claims for deliberate indifference, distinguish between the factual situations in which a plaintiff is alleging no treatment, and situations in which a plaintiff is alleging inadequate treatment. As plaintiff points out, however, the Sixth

---

[6]Defendants Nurse Lacy, Dr. Townsend, and ACH have attached Seiver's medical records to their motions to dismiss. These medical records are matters outside the pleadings as plaintiff did not submit any medical records as part of his complaint or his responses to defendants' motions to dismiss. Defendants also have not requested that the Court convert their motions to dismiss into motions for summary judgment. Although a motion to dismiss may be converted into a motion for summary judgment if matters outside the pleadings are presented to the Court, the Court has broad discretion in determining whether to accept or to exclude such materials. *See* Fed. R. Civ. P. 12(d). Here, the Court excludes the submitted materials outside the pleadings and declines to convert the motions to dismiss into motions for summary judgment. The Court finds that converting the motions without proper notice would be unfair to plaintiff, who requests in his response that in the event the Court treats the motions to dismiss as motions for summary judgment, that the Court "grant the parties additional time to complete necessary discovery" [Doc. 17-1, p. 6] prior to resolving the motions.

12

Circuit has discussed additional principles for district courts to follow in applying the Eighth Amendment standard of "deliberate indifference" to cases of alleged medical mistreatment, or inadequate medical treatment. In particular, in *Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834 (6th Cir. 2002), the Sixth Circuit quoted with approval the Eleventh Circuit's holding that "deliberate indifference may be established by a showing of grossly inadequate care as well as [by] a decision to take an easier but less efficacious course of treatment." *Id.* at 843 (quoting *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999)). The *Terrance* court went on to describe this standard of "grossly inadequate care" as "medical treatment 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" *Id.* at 844 (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)). Thus, plaintiff argues, given the Sixth Circuit's statements in *Terrance*, the fact that he received some medical treatment, however inadequate, is not dispositive of his claim for deliberate indifference and this claim should not be dismissed.

Given the other Sixth Circuit cases distinguishing between lack of treatment and inadequate treatment, the Court professes some confusion as to the panel's statement in *Terrance* that "less flagrant conduct" suffices to establish the "lower . . . standard" of deliberate indifference in "medical mistreatment cases." *Terrance*, 286 F.3d at 843, 847. However, the cases cited and discussed by defendants in their briefs neither cite nor discuss *Terrance* and its favorable citation to the line of Eleventh Circuit cases finding that deliberate indifference may be established by a showing of grossly inadequate care. Thus, given the

holding and discussion of allegations of inadequate medical treatment in *Terrance*, accepting plaintiff's allegations as true, and construing the second amended complaint in the light most favorable to plaintiff, the Court finds that plaintiff has set forth sufficient factual details to show that it is plausible that defendants Nurse Lacy and Dr. Townsend subjectively knew of a serious risk to Seiver's health, drew the inference that a substantial risk of harm existed, and consciously disregarded that risk by providing him inadequate medical treatment.

### b. Acting Under Color of State Law

Defendants Lacy and Dr. Townsend argue that plaintiff has not alleged that they committed any acts under color of state law at the time of the alleged deprivations. Plaintiff argues that these defendants were acting under color of state law.

As stated above, in order to state a claim under § 1983, a plaintiff must allege that the alleged deprivation of a constitutional right was committed by a person acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 49 (1988). A defendant acts under color of state law when the defendant exercises power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Id.* (citation and quotations omitted). Thus, while § 1983 does not create a cause of action against a private actor, privately employed medical professionals working under state contract are not considered private actors. *Id.* at 56. Medical professionals may be legally employed by a private entity, but it is the individual's "function within the state system, not the precise terms of his employment, that determines whether his actions can fairly be attributed to the State." *Id.* at 55-56. "Thus, generally, a public employee acts under color of state law while acting

14

in his official capacity or while exercising his responsibilities pursuant to state law." *Id.* at 50. "Contracting out prison medical care does not relieve the State of its constitutional duty to provide adequate medical treatment to those in its custody, and it does not deprive the State's prisoners of the means to vindicate their Eighth Amendment rights." *Id.* at 56.

In the second amended complaint, plaintiff alleges that defendants Nurse Lacy and Dr. Townsend are privately employed medical staff contracted by defendant Anderson County to work in its detention facility and provide medical services to inmates therein. Thus, plaintiff has alleged that these defendants provide inmate services that are the exclusive responsibility of the government. *See Estelle*, 429 U.S. at 103 ("An inmate must rely on prison authorities to treat his medical needs; if the authorities fails to do so, those needs will not be met."). Plaintiff also alleges that defendants Nurse Lacy and Dr. Townsend, while performing their duties as medical providers at the detention facility, caused Seiver to suffer harm as a result of delaying medical treatment or providing him inadequate medical treatment.

Accepting the above allegations as true and construing the second amended complaint in the light most favorable to plaintiff, the Court finds that plaintiff has stated sufficient factual details to show that it is plausible that defendants Nurse Lacy and Dr. Townsend, as medical providers working at the Anderson County detention facility, were acting under color of state law.

15

### c.    Defendant ACH

As noted above, in order to prevail on a § 1983 claim, a plaintiff must establish that a defendant is a person acting under the color of state law in depriving a citizen of their constitutional rights. 42 U.S.C. § 1983. A governmental entity may only be held liable for a constitutional deprivation under § 1983 if the deprivation was the result of an official policy or custom. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). However, a governmental entity cannot be held liable for a § 1983 violation under the theory of respondeat superior. *Id.* at 691. Proof of a single incident of unconstitutional conduct is not sufficient to impose liability under *Monell* unless proof of the incident also includes proof that it was caused by an existing, unconstitutional policy, which policy can be attributed to a policy maker. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985). A policy is a deliberate choice to follow a course of action made from among various alternatives by the official or officials responsible for establishing formal policy with respect to the subject matter in question. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986). Similar to a governmental entity, a private corporation cannot be held liable under § 1983 solely on the basis of respondeat superior or vicarious liability, but only upon a showing of a corporate policy or practice. *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 818 (6th Cir. 1996).

Defendant ACH contends that plaintiff's claims against it are no more than claims of vicarious liability for a § 1983 violation by its employees, defendants Nurse Lacy and Dr. Townsend, along with conclusory and overly broad allegations regarding unspecified unconstitutional policies and customs. Defendant ACH asserts that plaintiff's only claim that

16

is directed at a independent action by this defendant is the claim that its "official policies and customs," as well as those of defendant Anderson City, were either unconstitutional or unconstitutionally implemented. Defendant ACH contends, however, that plaintiff has failed to allege any facts or details upon which he bases these allegations, has failed to specify which entity's policies or customs are at issue, has failed to identify any specific policy or custom of any defendant, and has failed to identify how such policy or custom resulted in the alleged denial of "appropriate medical treatment." Defendant ACH also argues that there is no factual allegation that defendants Nurse Lacy and/or Dr. Townsend were "policymakers" responsible for making deliberate policy decisions on behalf of defendant ACH.

Plaintiff asserts that he has sufficiently alleged that defendant ACH was acting under color of state law because it acted in concert with defendant Anderson County to provide medical services to inmates. He argues that the treatment that defendant ACH's employees offered to Seiver was woefully inadequate and reflects defendant ACH's policies or customs of deliberate indifference as indicated by defendant ACH's employees' refusal to treat Seiver, to avail Seiver of adequate treatment, and for their attempts to cover themselves by calling Seiver's condition "not life threatening." Plaintiff argues that the facts of this case are similar to the facts of *Harris v. Adams*, 410 F. Supp. 2d 707 (S.D. Ohio. 2005), a failure to train case, in which the district court found that the plaintiff had alleged sufficient facts to state a claim for § 1983 liability of a local government based on an alleged unconstitutional official custom or policy.

The Court has reviewed plaintiff's allegations in the second amended complaint, along with the relevant law and the cases cited by the parties. Upon review, the Court agrees with defendant ACH that plaintiff has not alleged sufficient facts that Seiver was injured due to an unconstitutional custom or policy of defendant ACH, either by itself, or in concert with defendant Anderson County. While plaintiff alleges that Seiver was subjected to inadequate medical treatment by employees of defendant ACH, beyond this conclusory assertion, there are no factual allegations describing this inadequate treatment as a "policy" or "custom" [Doc. 71, ¶ 39]. Beyond the allegation that defendants Nurse Lacy and Dr. Townsend were employees of defendant ACH when they provided the inadequate treatment, along with other, unidentified officers, there are also no alleged facts connecting a policy or custom of defendant ACH to Seiver's injury. Thus, the Court finds plaintiff's allegations to essentially be allegations of vicarious liability and not of an unconstitutional policy or custom on the part of defendant ACH. Furthermore, there are no allegations in the second amended complaint of how defendant ACH was working in concert with defendant Anderson County to provide inadequate medical treatment, and no allegations as to who were the responsible "policymakers" with respect to the alleged unconstitutional policies or customs.

The Court also disagrees with plaintiff that the factual allegations in his second amended complaint are similar to those in *Harris*, in which the district court found that the plaintiff had succeeded in stating a claim for an unconstitutional policy or custom that resulted in a violation of the plaintiff's rights. *Id.*, 410 F. Supp.2d at 715. First, *Harris* is a failure to train case and there are no allegations in plaintiff's second amended complaint

pertaining to failure to train. Second, the plaintiff's allegations in *Harris* regarding the alleged unconstitutional policy or custom of the local government's failure to train its deputies were detailed, with the plaintiff specifically identifying the policy at issue, the entity whose policy it was, and the conduct on the part of the local government's employees, namely, their use of excessive force in making arrests or subduing suspects and their attempted cover-ups of such force by claims of self-defense. *Id.* at 709-10, 713-14. Third, in *Harris*, the district court referenced the Sixth Circuit's statement in *Moreno v. Metro. Gen. Hosp.*, No. 99-5205, 2000 WL 353537 (6th Cir. Mar. 28, 2000), that to establish a failure to train claim, a complaint must set forth sufficient facts connecting the victim's injury with the municipal policy or custom . . . [and] must also allege the defendant's failure to train constituted deliberate indifference to the rights of the victim in question." *Id.* at 712. In this case, the second amended complaint does not contain a failure to train allegation and does not identify whether the unconstitutional policy or custom was that of defendant ACH or that of defendant Anderson County.

In sum, the Court finds that plaintiff has failed to allege an unconstitutional policy or custom of defendant ACH and thus, plaintiff's § 1983 claim for deliberate indifference against defendant ACH will be **DISMISSED**.

### B. Qualified Immunity

While conceding that current case law indicates that as employees of a private entity which provides medical services to the Anderson County detention facility, defendants Nurse Lacy and Dr. Townsend are not entitled to the affirmative defense of qualified immunity,

these defendants submit that there is a good faith basis for the argument that they should be entitled to its protections.

The Court disagrees. In *Richardson v. McKnight*, 521 U.S. 399 (1997), the United State Supreme Court held that private prison guards who contracted with a state to manage a correctional facility were not entitled to the protections afforded by the affirmative defense of qualified immunity. Since *Richardson*, the Sixth Circuit has determined that "the history and purposes of qualified immunity [do] not reveal anything sufficiently special about the work of private prison medical providers that would warrant providing such providers with governmental immunity." *Cook v. Martin*, 148 F. App'x 327, 342, 2005 WL 2175922 (6th Cir. 2005). Thus, this Circuit has followed the lead of other Circuits that have consistently held that private medical providers may not assert the qualified immunity defense. *Harrison*, 539 F.3d at 525 (declining to extend qualified immunity to nurses employed by a primate medical provider); *Maddle v. Corr Med. Servs., Inc.*, No. 3:05-0306, 2008 WL 839715, at *5 (M.D. Tenn. Mar. 26, 2008) (finding that a director of medical services for a private employee whose company contracted with the state for providing inmates medical services was not entitled to qualified immunity); *Cook*, 148 F. App'x 327, 2005 WL 2175922 (finding that a physician's assistant who was privately employed by a company that provided medical care to inmates was not entitled to assert defense of qualified immunity); *see also Jensen v. Lane Cnty.*, 222 F.3d 570, 578 (9th Cir. 2000) (finding no qualified immunity defense available for private physicians providing services to county relating to civil commitments); *Hinson v. Edmond*, 192 F.3d 1342, 1345 (11th Cir. 1999), *amended on other grounds*, 205

20

F.3d 1264 (2000) (finding private physicians providing medical services to prison inmates had no right to assert qualified immunity defense).

In support of their argument that they are entitled to raise the qualified immunity defense, defendants Nurse Lacy and Dr. Townsend argue that they believe that current Supreme Court would reverse *Richardson*, or, at a minimum, decline to expand its holding to a situation such as the one presented in this case. Defendants Nurse Lacy and Dr. Townsend, however, cite no legal authority for why *Harrison*, *Maddle*, *Cook*, *Jenson*, and *Hinson* should not be followed by this Court. Accordingly, because the reasoning and holdings of these decisions apply to the facts raised in the instant action, the Court finds that defendants Nurse Lacy and Dr. Townsend are not entitled to the protections of qualified immunity.

## C.    State Law Tort Claims

In addition to his constitutional claims under § 1983, plaintiff also seeks damages for his state law tort claims for intentional and negligence infliction of emotional distress, gross negligence, negligence, willful and wanton disregard, punitive damages, and violations of the GTLA. In their motions to dismiss, all defendants contend that these claims should be dismissed because the claims sound in medical malpractice and plaintiff has failed to comply with the statutory requirements of the TMMA. In response to this argument, plaintiff submits that he has "permanently withdrawn" any medical malpractice and wrongful claims he had asserted against defendants Nurse Lacy, Dr. Townsend, and ACH [Doc. 58, ¶ 28]. This submission, however, misses the point of defendants' argument. Defendants have

21

argued that plaintiff's claims "sound" in medical malpractice under Tennessee law, even if plaintiff has not designated the claims as such, and should therefore be dismissed for failure to comply with the TMMA.

Beginning on October 1, 2008, all plaintiffs asserting medical malpractice claims in Tennessee must comply with a notice requirement.[7] This requirement provides, in pertinent part, that:

> Any person, or that person's authorized agent, asserting a potential claim for medical malpractice shall give written notice of the potential claim to each health care provider who will be a named defendant at least sixty (60) days before the filing of a complaint based upon medical malpractice in any court of this state.

Tenn. Code Ann. § 29-26-121(a)(1). Section 29-26-121(b) of the TMMA provides that if a complaint "is filed in any court alleging a claim for medical malpractice, the pleadings shall state whether each party has complied with [the pre-suit notice requirement] and shall provide such evidence of compliance as the court may require." *Id.* § 29-26-121(b). The TMMA also permits courts to exercise "discretion to excuse compliance with [the pre-suit notice requirement]" for "extraordinary cause shown." *Id.* One court has stated that the purpose of the pre-suit notice requirement is "to provide notice to potential parties and to facilitate early resolution of cases through settlement." *Jenkins v. Marvel*, 683 F. Supp. 2d 626, 639 (E.D. Tenn. 2010).

---

[7]Plaintiff filed the initial complaint on February 1, 2011.

In addition to the notice requirement, the TMMA also provides that:

> In any medical malpractice action in which expert testimony is required by § 29-26-115, the plaintiff or plaintiff's counsel shall file a certificate of good faith with the complaint.

Tenn. Code Ann. § 29-26-122(a). Expert testimony is required under § 29-26-115 except where the act of alleged malpractice lies within the knowledge of ordinary laymen. *See Kenyon v. Handal*, 122 S.W.3d 743, 758 (Tenn. Ct. App. 2003). The certificate of good faith must show that the plaintiff or the plaintiff's counsel has conferred with one or more competent experts, and those expert or experts must then provide a "signed written statement" confirming that "a good faith basis [exists] to maintain the action consistent with the requirements of § 29-26-115[.]" Tenn. Code Ann. §§ 29-26-122(a)(1), (a)(2). Failure to comply with this certificate of good faith requirement "make[s] the action subject to dismissal with prejudice." *Id.* § 29-26-122(c).

Plaintiff has not complied with either of these statutory requirements. Instead, plaintiff argues that he is not required to comply with the provisions of the TMMA because he has withdrawn his medical malpractice and wrongful death claims and framed his suit as a violation of constitutional rights under the "deliberate indifference" standard [Doc. 58, pp. 6-8]. This argument, however, is responsive to defendants' attack on plaintiff's § 1983 claim, but not to defendants' challenges to his state law tort claims. Furthermore, as plaintiff himself notes [Doc. 16-1, p. 15], "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106.

23

Upon review, the Court finds that plaintiff's state law tort claims fit squarely within the realm of medical malpractice under Tennessee law. The Tennessee Supreme Court has noted that medical malpractice is but a particular type of negligence, and when a negligence claim arises from injuries resulting from negligent medical treatment, the action is one for medical malpractice. *Gunter v. Lab. Corp. of Am.*, 121 S.W.3d 636, 639-40 (Tenn. 2003) (noting that the TMMA "essentially codifies the common law elements of negligence"). The codified sections of the TMMA give the common law elements of negligence insofar as they are to be applied in medical malpractice actions. *Gunter*, 121 S.W.3d at 639-40; *see* Tenn. Code Ann. § 29-26-115. The Tennessee Supreme Court has also noted that when a claim "bears a substantial relationship to the rendition of medical treatment by a medical professional," the medical malpractice statute is applicable. *Gunter*, 121 S.W.3d at 641.

Here, plaintiff has alleged claims for inadequate treatment against medical professionals and an employer of medical professionals.[8] Plaintiff's allegations and claims also involve the rendition of medical treatment—namely, the allegedly inadequate treatment Seiver received for the growth on his foot and the lesion on his groin. Furthermore, evaluating the appropriateness of defendants' decisions and Seiver's treatment would involve medical judgment. Accordingly, the Court finds that plaintiff's state law tort claims fall within the scope of the TMMA, and that his failure to follow the statutory procedures of that

---

[8]The second amended complaint contains no specific factual allegations against defendants Mayor Iwanski and Ms. Poluga and the only specific factual allegations in regard to defendants ACH and Anderson County pertain to allegedly unconstitutional policies and customs and policies.

24

law results in dismissal of plaintiff's state law tort claims. The TMMA, however, has no application to plaintiff's claim for deliberate indifference under § 1983.

## D.    Emotional Distress Claims

In his second amended complaint, plaintiff alleges that "defendants" treatment of him and "continual denial of the fact that [Seiver's] condition was something other than a non-life threatening infection constituted intentional infliction of emotional distress . . . [or i]n the alternative, said actions and/or omissions constituted negligent infliction of emotional distress." [Doc. 71, ¶ 63]. Defendants Nurse Lacy, Dr. Townsend, and ACH have argued that these claims should be dismissed for failure to state a claim.

### 1.    Intentional Infliction of Emotional Distress

The tort of outrageous conduct is also known as the tort of intentional infliction of emotional distress. *Doe 1 ex rel. Doe v. Roman Catholic Diocese*, 154 S.W.3d 22, 23 (Tenn. 2005). To succeed on a claim of outrageous conduct, a plaintiff must prove that the complained-of conduct (1) is intentional or reckless; is (2) "so outrageous that it is not tolerated by a civilized society"; and (3) results in serious mental injury. *Id.* (quoting *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997)). Liability exists "only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Bain*, 936 S.W. at 623. A successful case will be "one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead

him to exclaim, 'Outrageous!'." *Id.* (quoting *Medlin v. Allied Inv. Co.*, 398 S.W.2d 270, 274 (Tenn. 1966)).

In his response to defendant Nurse Lacy's motion to dismiss, plaintiff argues that defendants' inadequate medical treatment of Seiver was intentional, reckless, and outrageous. He argues that because Seiver "faces an impending, likely painful, death[,]" [Doc. 17-1, p. 23], it is clear that he has suffered from a serious mental injury for purposes of this claim.

Taking the allegations in the second amended complaint as true, the Court finds that plaintiff has failed to state a claim for intentional infliction of emotional distress. First, the Court notes that plaintiff's allegations and argument in regard to this claim pertain only to defendants Nurse Lacy, Dr. Townsend, and ACN. Thus, to the extent plaintiff has alleged this claim against the other defendants in this action, this claim is **DISMISSED** as to them due to lack of factual allegations sufficient to state a claim. Furthermore, plaintiff has not identified conduct by defendants Nurse Lacy, Dr. Townsend, or ACN that could be considered outrageous conduct under *Bain* or other Tennessee cases considering claims for intentional infliction of emotional distress. Even assuming that plaintiff had sufficiently alleged that their actions/omissions in providing Seiver inadequate treatment were intentional and outrageous, he has failed to identify any specific "serious or severe" emotional distress Seiver has suffered from the alleged conduct. *See Betty Saint Rogers v. Louisville Land Co.*, No. E2010-00991-COA-R3-CV, 2011 WL 2112766, at *4 (Tenn. Ct. App. May 25, 2011) ("The law intervenes only where the distress is so severe that no reasonable [person] could be expected to endure it.") (quoting *Miller v. Willbanks*, 8 S.W.3d. 607, 615 (Tenn. 1999));

*Johnson v. Woman's Hosp.*, 527 S.W.2d 133, 140 (Tenn. Ct. App. 1975) (affirming the jury's finding that the defendant engaged in outrageous conduct when he preserved the body of a premature stillborn infant in a jar of formaldehyde and displayed the jar to the mother).

Finally, plaintiff's argument that Seiver faced an impending death due to his illness and that the illness took an emotional toll does not, by itself, constitute an allegation of a serious mental injury as a result of defendants' conduct, particularly as when the second amended complaint contains no factual allegations regarding this alleged severe emotional injury. Accordingly, plaintiff's claim for intentional infliction of emotional distress will be **DISMISSED** because the Court does not find plaintiff's allegations to be sufficient to state a claim.

### 2. Negligent Infliction of Emotional Distress

Under Tennessee law, a claim for negligent infliction of emotional distress requires that the plaintiff establish the elements of a general negligence claim: (1) duty; (2) breach of duty; (3) injury or loss; (4) causation in fact; and (5) proximate causation. *Lourcey v. Estate of Scarlett*, 146 S.W.3d 48, 52 (Tenn. 2004). The plaintiff must also establish the existence of a serious or severe emotional injury that is supported by expert medical or scientific evidence. *Id.* (citing *Camper v. Minor*, 915 S.W.2d 437, 446 (Tenn. 1996)). The Tennessee Supreme Court has described "[a] serious or severe emotional injury . . . [as occurring] where a reasonable person, normally constituted, would be unable to adequately cope with the mental stress engendered by the circumstances of the case." *Camper*, 915 S.W.2d at 446 (internal quotation and citation omitted).

First, and similar to plaintiff's claim for intentional infliction of emotional distress, the Court finds that plaintiff's allegations and argument in regard to his claim for negligent infliction of emotional distress pertain only to defendants Nurse Lacy, Dr. Townsend, and ACN.[9] Thus, to the extent plaintiff has alleged this claim against the other defendants in this action, this claim is **DISMISSED** as to them due to lack of factual allegations sufficient to state a claim. Plaintiff argues that because "negligence elements are present" and constituted a policy of deliberate indifference, he has stated a claim for negligent infliction of emotional distress. The second amended complaint, however, contains no allegations of any "emotional distress" suffered by Seiver, whether arising from his treatment or his illness, or whether such distress caused an emotional injury which would disable a reasonable, normally constituted person from adequately coping with the alleged mental stress. As noted above, while detailed factual allegations are not required to survive a motion to dismiss for failure to state a claim, entitlement to relief requires more than mere labels and conclusions and a simple recitation of the elements of a claim. *See Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555, 557). The allegations in plaintiff's second amended complaint in regard to his claim for negligent infliction of emotional distress do not reach past the level of mere labels and conclusions and this claim will also be **DISMISSED**.

---

[9]Plaintiff has withdrawn his negligent infliction of emotional distress claim as to defendant Dr. Townsend [Doc. 42, ¶ 84].

## IV.    Conclusion

For the reasons stated above, defendants' motions to dismiss in regard to the amended complaint [Docs. 3, 11, 27] are **DENIED as moot**; the motion to dismiss plaintiff's state law claims in the second amended complaint of defendants Mayor Iwanski, Sheriff White, Ms. Poluga, and Anderson County [Doc. 45] is **GRANTED**; the motion to dismiss the second amended complaint of defendant ACH [Doc. 38] is **GRANTED**; and the motion to dismiss the second amended complaint of defendants Nurse Lacy and Dr. Townsend [Doc. 40] is **GRANTED in part** and **DENIED in part**. Thus, in accordance with these rulings, plaintiff's state law negligence claims are **DISMISSED** as to all defendants, plaintiff's intentional and negligent infliction of emotional distress claims are **DISMISSED** as to all defendants, and plaintiff's § 1983 claim is **DISMISSED** as to defendant ACH. Plaintiff's § 1983 claim against defendants Nurse Lacy, Dr. Townsend, Mayor Iwanski, Ms. Poluga, and Anderson County remains.

IT IS SO ORDERED.


s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE