UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE AT KNOXVILLE

| | | |
|---|---|---|
| GARY STEVE SEIBER, | ) | |
| Executor of the estate of | ) | |
| Mitchell Seiver, | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:11-CV-108 |
| | ) | JURY OF TWELVE DEMANDED |
| ANDERSON COUNTY; MAYOR | ) | Varlan/Shirley |
| MYRON IWANSKI; J. LYNN | ) | |
| POLUGA; NURSE MARY LACEY; | ) | |
| NURSE JANE DOE I; NURSE | ) | Removed from Anderson County |
| PRACTITIONER JANE DOE II; and | ) | Circuit Court, No.: BOLA0582 |
| DR. CHARLES W. TOWNSEND | ) | |
| | ) | |
| | ) | |
|     Defendants. | ) | |
| | ) | |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF HIS PRELIMINARY RESPONSE TO THE MOTION FOR SUMMARY JUDGMENT FILED AGAINST HIM BY DEFENDANTS MARY LACEY AND CHARLES W. TOWNSEND**

Comes now the Plaintiff, by and through counsel, pursuant to Rule 56 of the Federal Rules of Civil Procedure and 7.1 of the Local Rules of Court for the Eastern District of Tennessee Federal Court, and submits this Memorandum of Law in Support of his Preliminary Response to the Motion for Summary Judgment filed by Defendants Mary Lacey (hereinafter sometimes "Nurse Lacey," "Nurse Mary Lacey," or "Defendant Lacey") and Charles W. Townsend (hereinafter sometimes "Dr. Townsend" or "Defendant Townsend"). The Plaintiff relies upon the discovery responses and Rule 26 Disclosures of Defendants Anderson County, Nurse Mary Lacey, and Dr. Charles W. Townsend along with the record herein and the Exhibits to the Deposition testimony of Nurse Mary Lacey (as her deposition transcript is not yet available).

## STATEMENT OF FACTS:

The facts in this case, as set forth more fully in the Record herein, are as follows:

The Deceased, Mitchell Seiver (hereinafter sometimes "Mr. Seiver"), was incarcerated in the Anderson County Detention Facility on or about September 22, 2009. [Anderson County, Tennessee Booking Sheet, Provided by Defendant Anderson County as part of its Rule 26 Disclosures[1], attached hereto as Exhibit "A"].

On or about September 23, 2009, pursuant to a written "Medical Request," Mitchell Seiver was evaluated by Defendant Lacey for (1) a growth on his right heel and (2) a large lesion on his right groin. Nurse Lacey noted that Mr. Seiver told her that "he used wart remover on his foot and it moved up into his groin." [Medical Request dated September 23, 2009, part of Collective Exhibit No. 4 to Deposition of Nurse Mary Lacey; Medical Progress Note, dated September 23, 2009, part of Collective Exhibit No. 3 to Deposition of Nurse Mary Lacey: both attached hereto as Collective Exhibit "B"].

On October 2, 2009, Mitchell Seiver underwent a separate physical evaluation by Nurse Lacey, who prepared a "Medical History" report that <u>did not include one reference</u> to the growth on Mr. Seiver's foot or to the large lesion on Mr. Seiver's groin. Said report certainly failed to provide a detailed description of the growth's size, shape, texture, or color.[2] [Medical History

---

[1] Plaintiff notes that, as per Defendant Anderson County's Response to Request for Production of Documents No. 4, Mitchell's Seiver's entire medical and jail files were provided as part of the County's Rule 26 disclosures. Plaintiff anticipates that on November 1, 2012, appropriate representatives of the jail will testify that said medical and jail files are the complete records, kept in the regular course of business, by the Anderson County, Tennessee Detention Facility and Advanced Correctional Healthcare, Inc. Plaintiff further anticipates that the deposition transcripts from the depositions of Nurse Mary Lacey and Dr. Charles W. Townsend will elicit that they created, signed and/or approved nearly all of the medical documents referenced in this Response.

[2] The above-referenced Medical History report notwithstanding, Plaintiff expects Nurse Lacey's deposition transcript to reflect that the growth on Mitchell Seiver's foot was the size of a golf ball on September 23, 2009. Indeed, Plaintiff expects Nurse Lacey's deposition transcript to reflect that the growth on Mitchell Seiver's foot was not much different in size on September 23, 2009 as in the photographs attached as Collective Exhibit 2 to Nurse

report dated October 2, 2009, Part of Collective Exhibit 3 to the Deposition of Nurse Mary Lacey, attached hereto as Exhibit "C"].

Mitchell Seiver submitted a "Sick Call Request" requesting an evaluation for his "foot a ceid wart and a kernel in leg" on January 21, 2010 to which Nurse Rebecca Slagle responded "MD aware  Ø orders @ this time." [Sick Call Request form dated January 21, 2010, part of Collective Exhibit No. 4 to Deposition of Nurse Mary Lacey, attached hereto as Exhibit "E"]. Plaintiff expects the deposition transcript of Nurse Lacey to reflect that Dr. Charles W. Townsend signed off on Nurse Slagle's response in July 2010. As such, presumably, Dr. Townsend was the physician referenced by Nurse Slagle in said report. [Sick Call Request form dated January 21, 2010, part of Collective Exhibit No. 4 to Deposition of Nurse Mary Lacey, attached hereto as Exhibit "E"].

Despite Mitchell Seiver's January 21, 2010 Request, pursuant to the medical records availed the Plaintiff through Defendant Anderson County's written discovery responses, aside from Nurse Slagle's above-referenced response, there is no medical record or treatment note specifying that Mitchell Seiver was even seen by a nurse or a doctor in January 2010 or February 2010.

Indeed, while Plaintiff expects Nurse Lacey's deposition transcript to reflect that she was present at the jail roughly three days per week during her entire tenure at the Anderson County, Tennessee Detention Facility, including the period between January and March 2010, there were no medical records or treatment notes of any kind prepared by her, or any other Advanced

---

Lacey's deposition testimony. [Three photographs of the growth on Mitchell Seiver's foot, taken just prior to said growth being removed, Part of Collective Exhibit 4 to the Deposition of Nurse Mary Lacey, attached hereto as Collective Exhibit "D"].

Correctional Healthcare, Inc. employee, regarding Mr. Seiver between October 2, 2009 and March 2010. [3]

Thereafter, in an "Inmate Request Form" dated April 22, 2010, Mitchell Seiver made an impassioned plea for help. Specifically, he stated:

> I need to talk to someone in the administration about a wart on my foot it is leaking green fluid out and is very painful. I have had it for the last 6 months, and it keeps getting worse and bigger. It also bleeds heavily when I walk on it. I desperately need to go to the hospital to have it removed before it gets worse. Please I have talked to several officers about it. The pain shoots all up my leg to my hip constantly. Please let me get some help. Please and thank you.

In response, Nurse Lacey wrote "Mr. Seiber, we have treated this lesion on your heel and the doctor has seen you to check this also. I will speak c̄ the doctor again to see if he wants a different plan of care. I spoke c̄ the doctor and there isn't much of anything else we can do since it is not a life threatening situation." [Inmate Request Form dated April 22, 2010, part of Collective Exhibit No. 4 to Deposition of Nurse Mary Lacey, attached hereto as Exhibit "G"]. Dr. Townsend signed off on the above-referenced note on May 7, 2010. Therefore, presumably, he was the physician referenced by Nurse Lacey in the note. [Inmate Request Form dated April 22, 2010, part of Collective Exhibit No. 4 to Deposition of Nurse Mary Lacey, attached hereto as Exhibit "G"].

On April 28, 2010, Mr. Seiver submitted another Sick Call Request Form, this time "To see the Doctor." [Inmate Request Form, part of Collective Exhibit No. 4 to Deposition of Nurse

---

[3] On March 20, 2010, Nurse Practitioner Chekesha Colley noted that Mr. Seiver was complaining of the "wart on [his] foot," that said wart should be removed when he got out of jail, and that dressing changes should "continue." Some time in March, one Dr. Capparelli Ordered a five-day stint of Bactrim, an antibiotic; however, not one medical note reflects a follow-up evaluation to determine whether said antibiotic proved an effective treatment for either the growth on Mitchell Seiver's foot or the lesion on his groin. [Medical Progress Note, dated March 20, 2010; Medication Administration Record, dated "3/10": both part of Collective Exhibit No. 3 to Deposition of Nurse Mary Lacey: both attached hereto as Collective Exhibit "F"].

Mary Lacey, attached hereto as Exhibit "H"]. In response, Nurse Rebecca Slagle stated "MD x2 are aware Ø indication for treatment. Condition is not life threatening and is known to be pre-existing." Since Dr. Capparelli and Dr. Townsend were the only two physicians noted in Defendant Lacey's Interrogatory Answers to have treated Mr. Seiver, presumably, Dr. Townsend was again made aware of Mr. Seiver's complaints.[4] [Inmate Request Form, part of Collective Exhibit No. 4 to Deposition of Nurse Mary Lacey, attached hereto as Exhibit "H"].

Thereafter, on May 10, 2010, Mr. Seiver submitted another "Inmate Request Form" stating "I desperately need to use the desk phone to contact my lawyer Roger Miller because he is supposed to see about get me medical help on my feet . . . ." [Inmate Request Form dated May 10, 2010, part of Collective Exhibit No. 4 to Deposition of Nurse Mary Lacey, attached hereto as Exhibit "I"].

Finally, on May 12, 2010, when Mr. Seiver had submitted another "Sick Call Request Form" stating "I have a wart the size of a golf ball on my right foot and shooting pains are shooting up my leg and is bleeding badly," Nurse Lacey responded that he was scheduled to see Dr. Townsend on May 14, 2010. [Inmate Request Form dated May 12, 2010, part of Collective Exhibit No. 4 to Deposition of Nurse Mary Lacey, attached hereto as Exhibit "J"]. On May 13, 2010, Mitchell Seiver was finally prescribed a seven day trial of Ibuprophen via voice Order by Dr. Townsend. [Physician Order Form, part of Collective Exhibit 3 to Deposition of Nurse Mary Lacey, attached hereto as part of Exhibit "K"].

On May 14, 2010, Dr. Townsend finally saw Mr. Seiver. As per that evaluation, Dr. Townsend diagnosed Mr. Seiver with having a "Granuloma" and referred Mr. Seiver to a surgeon for removal of same. [Inmate Request Form, part of Collective Exhibit No. 3 to

---

[4] Such is consistent with the handwriting at the bottom of the note, reflecting a date of May 7, 2010, which appears to be in Dr. Townsend's handwriting.

Deposition of Nurse Mary Lacey, attached hereto as Exhibit "H"]. While Plaintiff expects Nurse Lacey's deposition transcript to reflect her insistence that she communicated Dr. Townsend's above-referenced referral to a medical liaison at the Anderson County, Tennessee Detention Facility, Plaintiff also expects Nurse Lacey's deposition transcript to reflect that she does not remember the name of the individual she made that communication to. Moreover, Mr. Seiver's medical and jail files are devoid of any records reflecting a written request, by nurse Lacey or any Advanced Correctional Healthcare employee, for the Detention Facility to send Mr. Seiver to see a surgeon.

As per Interrogatory Answer 13 propounded by Anderson County, Tennessee to the Plaintiff's Interrogatories, it is Anderson County's position that Nurse Lacey and Dr. Townsend failed to communicate Dr. Townsend's May 14, 2010 surgical referral to Anderson County. Indeed, in its above-referenced Interrogatory Answer, the County stated as follows:

> Mr. Seiber was seen by Dr. Townsend on 05/14/2010, and it appears the order was not acted upon by Andvanced Correctional Healthcare, Inc. staff. The medical record also shows that Mr. Sieber was seen by Dr. Townsend on 05/24/2010 and no transport was recommended. A second entry dated 07/29/2010 (date not clear) indicates surgery is needed and dressing change. A third Physician Order Form, dated 06/25/2010 shows a verbal order for Keflex and on 07/29/2010, Dr. Townsend again indicates need for surgery to remove the mass on his foot. After Dr. Townsend issued the orders dated 07/29/2010, Mr. Seiber was sent to and placed under the care of Dr. Christensen on 08/09/2010.

[Defendant Anderson County's Response to Plaintiff's First Set of Interrogatories and Requests for Production of Documents, p. 6, Response 13, attached hereto as Exhibit "L"].

There is no evidence in Mr. Seivers' medical or jail record reflecting that Dr. Townsend or Nurse Lacey followed-up with Anderson County, Tennessee Detention Facility employees

regarding Dr. Townsend's May 14, 2010 referral until sometime in July 2010.[5] Further, in addition to the fact that Dr. Townsend misdiagnosed the growth on Mr. Seiver's foot and failed to draw a connection between the growth on his foot and the lesion on his groin, there is no evidence that Dr. Townsend ever referred Mr. Seiver to an oncologist or dermatologist for a determination regarding the nature of the golf-ball sized growth on Mr. Seivers' foot.

On May 24, 2010, Mr. Seiver was prescribed a wound cleanse with sterile water and clean dressing daily, via voice order by Dr. Townsend; however, there is no evidence that the Ibuprofen prescription of May 13, 2010 was continued. [Physician Order Form, part of Collective Exhibit 3 to Deposition of Nurse Mary Lacey, attached hereto as part of Exhibit "N"].

On June 25, 2010, Mr. Seiver was prescribed a fourteen (14) day trial of another antibiotic, Keflex, via voice order by Dr. Townsend; however, again, there is no evidence of any medical follow-up by Dr. Townsend regarding whether said antibiotic was successful in treating Mr. Seiver's growth or lesion until July 29, 2010. [Physician Order Form, part of Collective Exhibit 3 to Deposition of Nurse Mary Lacey, attached hereto as part of Exhibit "O"].

On July 22, 2010, Mr. Seiver was evaluated by Nurse Lacey. At that time, Nurse Lacey assessed Mr. Seiver as having an "infection," and noted the "Granuloma" Mr. Seiver's foot along with swelling in his right groin. Via voice order, Dr. Townsend prescribed another antibiotic, Erythromycin, and five (5) days' worth of Ibuprofen. [Medical Progress Note, part of Collective Exhibit 3 to Deposition of Nurse Mary Lacey, attached hereto as Exhibit "P"].

---

[5] Plaintiff expects Nurse Lacey's deposition testimony to reflect that she changed Mr. Seiver's dressing during this period and, on June 18, 2010, notified a Lieutenant at the Anderson County Detention facility that "if [Mr. Seiver] is going to be a long timer we need to go ahead and send him to a surgeon. That place stinks + drains something aweful." However, Plaintiff also expects that, her deposition transcript will demonstrate that, upon cross examination by Counsel for Anderson County, Tennessee, Nurse Lacey could not remember which "lieutenant" she spoke with or that she ever submitted the request in written form. [Communication Log #3, part of Collective Exhibit 6 to Deposition of Nurse Mary Lacey, attached hereto as part of Exhibit "M"]. *** Plaintiff notes that Communication Logs # 1 and 2 have been lost and spoliation issues likely have arisen.

On July 29, 2010, Dr. Townsend re-referred Mr. Seiver to a surgeon for removal of the growth on his foot. Once again, Dr. Townsend made no referral to an oncologist or a dermatologist to analyze the growth on Mr. Seiver's foot and there is no record in Mr. Seivers' medical or jail file reflecting that said referral was communicated to Anderson County Detention Facility employees. [Physician Order Form, part of Collective Exhibit 3 to Deposition of Nurse Mary Lacey, attached hereto as part of Exhibit "Q"].

Finally, on August 5, 2010, there is a "Nurses Notes" form prepared by Nurse Lacey stating as follows:

> Mr. Seiber was escorted to medical for dsg. Change to inside of ankle on (R) foot. I/M has been at this facility since Sept. 22, 2009. We have been treating this mass off and on with antibiotics and Ibuprofen, cleansing with sterile H2O and saline and applying clean dry dsg. He c/o pain radiating from his foot into the (R) groin. He has a swollen area in his (R) groin that is tender to touch. There has been no change in size or appearance of this mass but it has started draining a greenish yellow colored fluid and has a foul odor. There is no distress noted. Dr. Townsend has requested that we send him out to another physician for possible removal of mass.

[Nurses Notes, part of Collective Exhibit 3 to Deposition of Nurse Mary Lacey, attached hereto as part of Exhibit "R"]. Said Nurses Notes form is followed by a hand-written note by Dr. Capparelli reflecting that Mr. Seiver "has an apt to see podiatrist for excision." [See Id.]

After Mr. Seiver had seen Dr. Christensen, in a letter dated August 17, 2010, Nurse Lacey wrote the following:

> I am writing you this letter in regards to inmate Mitchell Seiber. Mr. Seiber has been our custody since September 23, 2010. He had a pre existing mass on his right ankle upon being detained in our facility. The medical staff had been doing dressing changes and antibiotic therapy as referred by our physician. The facility physician had seen Mr. Seiber on 3 separate occasions. Mr. Seiber was later sent to see Dr. Christiansen with the Tennessee Food ant Ankle Clinic in Oak Ridge. Dr. Christiansen removed the mass and sent a biopsy to pathology to be tested. On August 12, 2010, Dr.

> Cristiansen called me and advised that the results had come back on Mr. Seiber's lab results and it was confirmed that he has malignant Melanoma cancer and it is in level V. Dr. Christiansen advised to send Mr. Seiber to see an oncologist for treatment. Cancer treatment is extremely expensive. The chemotherapy and radiation treatments can run into hundreds of thousands of dollars. Mr. Seiber is going to require stronger pain medication than what we provide at our facility. After speaking with Dr. Christiansen he expressed his opinion that Mr. Seiber is in final stage of cancer and his life expectancy could be very short. We are requsting Mr. Seiber to be released due to the expense of his treatment, pain management that he will require and his life expectancy.

[Letter by Nurse Lacey dated August 17, 2010, part of Collective Exhibit 5 to Nurse Lacey's deposition, attached hereto as Exhibit "S"].

At around the same time, Dr. Charles Townsend wrote a similar letter. Said letter stated in pertinent part as follows:

> I am writing on the Inmate Mitchell Seiber.
> The Costs of His Chemotherapy are going to Be astronomical. The Treatments will Be 5000.00 every 3 weeks and 300.00 For Dr. visits.
> In view of His Charges the Costs To take Care of Him for the Next 6 Mos will Be over $50,000.00.
> If there is a way to Release Him Safely It would Save the Co lots of Dollars. His Dx is A MAlignant Melanoma of the R Heel. I realize He would like to stay Here. But TennCare should pay for this Treatment.

[Handwritten Letter by Dr. Charles W. Townsend, part of Collective Exhibit 5 to Nurse Lacey's deposition, attached hereto as Exhibit "T"].

## SUMMARY JUDGMENT STANDARD OF REVIEW:

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is "only proper if the moving party can 'show that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." [Bondurant v. Air Line Pilots Ass'n Intern., 679 F. 3d 386, 392 (6th Cir. 2012) (quoting Fed. R. Civ. P. 56(a))].

Further, "[i]n assessing a summary judgment motion, the reviewing court must view all of the facts in the light most favorable to the non-moving party, and then consider whether a jury, viewing the facts in that same light, could find in favor of the non-movant. [Id. (citing Bennett v. City of Eastpoint, 410 F. 3d 810, 817 (6th Cir. 2005))].

While it is true that "the non-moving party cannot rest on its pleadings but must present some 'specific facts showing that there is a genuine issue for trial," it is also true that the "party seeking summary judgment bears the initial burden of showing the absence of a genuine issue of material fact." Moore v. Holbrook, 2 F.3d 697, 699 (6th Cir. 1993).

## ANALYSIS AND ARGUMENT:

I.  **Constitutional Rights Underlying 42 U.S.C. § 1983 Claims Generally**

Via the Eighth Amendment of the United States Constitution, it was the "primary concern of the drafters [] to 'proscribe torture[s]' and other 'barbar[ous]' methods of punishment." [Estelle v. Gamble, 429 U.S. 97, 102 (1976) (quoting Granucci: Nor Cruel and Unusual Punishment Inflicted: The Original Meaning, 57 Calif. L. Rev. 839, 842 (1969))].

Prison officials are required to "provide humane conditions of confinement . . . [along with] adequate food, clothing, shelter, and medical care. . . ." to prisoners in their charge. [Farmer v. Brennan, 511 U.S. 825, 832-33 (1994) (citing Helling et al. v. McKinney, 509 U.S. 25, 31-32 (1933) and Hudson v. Palmer, 468 U.S. 517, 526-27 (1984))].

As the Court noted in Estelle, "[i]n the worst cases, such a failure may actually produce physical 'torture or a lingering death, the evils of most immediate concern to the drafters of the [Eighth] Amendment.'" [Id. at 103 (quoting In re Kemmler, 136 U.S. 436, 447 (1890))].

However, even "[i]n less serious cases, *denial of medical care may result in pain and suffering which no one suggests would serve any penological purpose*." [Id. at 103 (emphasis added)].

Relevant case law makes it clear that the "Due Process Clause of the Fourteenth Amendment" extends to pre-trial detainees' rights "at least as great as the Eight Amendment protections available to a convicted prisoner." [Phillips v. Roane County, et al., 534 F. 3d 531, 539 (6th Cir. 2008) (quoting City of Revere v. Mass. Gen. Hosp., 463 U.S. 239, 244 (1983))]. Therefore, during his entire incarceration, Mitchell Seiver was constitutionally endowed with rights to "adequate food, clothing, shelter, and medical care." [Farmer v. Brennan, 511 U.S. 825, 832-33 (1994); Phillips v. Roane County, et al., 534 F. 3d 531, 539 (6th Cir. 2008) (quoting City of Revere v. Mass. Gen. Hosp., 463 U.S. 239, 244 (1983))].

According to the Court in Farmer v. Brennan, 511 U.S. 825 (1994), "[w]hile *Estelle* establishes that deliberate indifference entails something more than mere negligence, the cases are also clear that it is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." [Id. at 835].

Therefore, Plaintiff submits that, according to the U.S. Supreme Court, "deliberate indifference" falls somewhere in the continuum between negligence and willful and wanton behavior. [See Id.].

While it is true that "[a] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment" and that "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner," Id. at 106,  it is also true that, in the Sixth Circuit, "in cases involving mistreatment by medical personnel, . . . '*less flagrant conduct [than that of other government officials] may constitute deliberate indifference*.'" [Phillips v. Roane County,

et al., 534 F. 3d 531, 544 (6th Cir. 2008) (quoting Terrance v. Northville Reg'l Psychiatric Hosp., 286 F.3d 834, 843 (6th Cir. 2002)) (emphasis added)].

In Terrance v. Northville Reg'l Psychiatric Hosp., 286 F.3d 834, 843 (6th Cir. 2002), the Sixth Circuit cited as persuasive an opinion from the Eleventh Circuit which held that "deliberate indifference may be established by a showing of ***grossly inadequate care as well as a decision to take an easier but less efficacious course of treatment.***" [Id. at 843 (quoting McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir.1999)) (emphasis added)].

The Court in Northville specifically noted that ***"[w]hen the need for treatment is obvious, medical care which is so cursory as to amount to no treatment at all may amount to deliberate indifference."*** [Terrance v. Northville Reg'l Psychiatric Hosp., 286 F.3d 834, 843-44 (6th Cir. 2002) (quoting Mandel v. Doe, 888 F.2d 783, 789 (11th Cir.1989)) (emphasis added)].

## II. Deliberate Indifference Toward Mitchell Seiver by Defendants Under 42 U.S.C. § 1983

With regard to claims presented under 42 U.S.C. § 1983, the Sixth Circuit has held that "'a plaintiff must set forth facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law." [Phillips v. Roane County, et al., 534 F. 3d 531, 538 (6th Cir. 2008) (quoting Sigley v. City of Parma Heights, 437 F.3d 527, 533 (6th Cir. 2006))].

### A. Defendants' Action Under Color of State Law for Purposes of 42 U.S.C. § 1983

Based on the Defendants' Motion for Summary Judgment and accompanying Memorandum of Law, it does not appear that they are seriously challenging the fact that they were, at all times relevant hereto, "acting under the color of state law" as a nurse and physician for Advanced Correctional Healthcare, Inc. at the Anderson County, Tennessee Detention Facility. [See Documents 96 and 97]. Plaintiff, of course, submits that they were.

Plaintiff would refer the Court to Lugar v. Edmonson Oil Co., Inc., et al., 457 U.S. 922, 941 (1981) as persuasive on this issue. Specifically, the Court in Lugar held that "a private party's joint participation with state officials in the seizure of disputed property is sufficient to characterize that party as a 'state actor' for purposes of the Fourteenth Amendment." [Id.].

Plaintiff submits that Defendant's "joint participation" with Anderson County officials in depriving Mr. Seiver of his Constitutional right to adequate medical care is "sufficient to characterize" them as "'state actor[s]' for purposes of the Fourteenth Amendment." [Id.].

## B. Defendant's Deprivation of Mitchell Seiver's Constitutional Rights for Purposes of 42 U.S.C. § 1983

As alluded to previously, according to the Supreme Court in Estelle v. Gamble, 429 U.S. 97, 104 (1976), "deliberate indifference to serious medical needs of prisoners constitutes" a violation of their constitutional rights. [Id.]. It is well settled that "[a] constitutional claim for deliberate indifference to serious medical needs requires a showing of objective and subjective components." [Phillips v. Roane County, et al., 534 F. 3d 531, 539 (6th Cir. 2008)].

On one hand, the "objective component" necessitates a showing of "sufficiently serious 'medical need.'"[6] Id. On the other hand, the "subjective component requires a plaintiff to 'allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk.'" [Id. at 540 (quoting Comstock v. McCrary, 273 F.3d 693, 703 (6th Cir.2001))]. Because prison officials "do not readily admit this subjective component, . . . 'it [is]

---

[6] As noted by the Supreme Court in Estate of Owensby v. City of Cincinnati, et al., 414 F.3d 596 (6th Cir. 2005), while medical proof may be necessary to assess whether the denial of medical care caused a serious medical injury in cases where the prisoner or pre-trial detainee's 'affliction is seemingly minor or non-obvious,' no such evidence is required where the individual had a 'serious need for medical care that was so obvious that even a layperson would easily recognize the necessity for a doctor's attention. . . .'" Indeed, "[w]here the seriousness of a prisoner's needs for medical care is obvious even to a lay person, the constitutional violation may arise. This violation is not premised upon the 'detrimental effect' of the delay, but rather that the delay alone in providing medical care creates a substantial risk of serious harm."

permissible for reviewing courts to infer circumstantial evidence that a prison official had the requisite knowledge.'" [Id. at 540].

In the present case, over a period of roughly nine months, the Plaintiff suffered severe pain from a growth on his right foot and a lesion on his right groin. [Please see Exhibits "A" through "G" attached hereto]. No later than April 23, 2010, Nurse Lacey and Dr. Townsend were aware of Mr. Seiver's complaints of severe pain that ran the entire extent of his right leg, that the growth on his foot was oozing a greenish liquid and that the growth on his right foot was bleeding when he walked. [Please see Exhibit "G" attached hereto]. That fact notwithstanding, Nurse Lacey responded that she had spoken with the physician, presumably Dr. Townsend because he signed off on her note, and there wasn't "much of anything else we can do since it is not a life threatening condition."[7] [Please see Exhibit "G" attached hereto]. That statement was made notwithstanding the fact that (1) dressing changes, (2) one short stint of antibiotics (that was not followed-up on) and (3) antibiotic ointment were the only "treatments" given Mr. Seiver. [Please see Exhibits "A" through "G" attached hereto].

Finally, after Mr. Seiver filed two more medical request forms, dated April 28, 2010 and May 12, 2010, which noted that the growth on Mr. Seiver's foot was the size of a golf ball, Nurse Lacey agreed to allow Mr. Seiver to finally see Dr. Townsend, and Dr. Townsend finally prescribed Mr. Seiver Ibuprofen (but for only 7 days). [Please see Exhibit "K" attached hereto].

Thereafter, despite Dr. Townsend's referral for Mr. Seiver to see a "surgeon" to remove the growth on Mr. Seiver's foot, Dr. Townsend made no referral for Mr. Seiver to see an

---

[7] While Nurse Lacey's response to Mr. Seiver's medical request on April 23, 2010 suggests that Dr. Townsend had previously seen Mr. Seiver, Ms. Lacey's written letter dated August 17, 2010 clearly sets forth that Dr. Townsend had only seen Mr. Seiver three (3) times. As Dr. Townsend wrote three physician notes, dated May 14, 2010, July 29, 2010, and another date that is indecipherable (but, in light of the physician notes surrounding that note, some time after May 24, 2010), there is a serious question regarding whether Dr. Townsend ever saw Mr. Seiver prior to May 14, 2010).

oncologist, dermatologist or other specialist for a determination of the kind of growth it was. Further, Anderson County contends that neither Nurse Lacey nor Dr. Townsend communicated that referral to the County, which resulted in Mr. Seiver having to wait nearly three (3) more months to see a qualified physician to remove the growth. [Please see Exhibit "L" attached hereto].

Because the average person would recognize a growth that substantially increases in size and is accompanied by severe pain and a weeping groin lesion to be a serious medical problem necessitating an evaluation by a dermatologist, oncologist, or a similarly qualified physician, Plaintiff submits that the treatment (or lack thereof) received by Mr. Seiver satisfies the objective component of the section 1983 deliberate indifference standard. [Phillips v. Roane County, et al., 534 F. 3d 531, 539-40 (6th Cir. 2008); Estate of Owensby v. City of Cincinnati, et al., 414 F.3d 596 (6th Cir. 2005)]. In any event, an average person would be able to determine that Mr. Seiver had not been sent to a surgeon for nearly three months.

With regard to the subjective component, it must be noted that while Nurse Lacey responded to Mr. Seiver in April 2010 that "there was not much else" they could do, Mr. Seiver was enduring severe pain throughout his entire leg, bleeding when he walked, and green liquid oozing from his foot, yet Nurse Lacey and Dr. Townsend had not prescribed any medication for pain (not even Ibuprofen) or considered the fact that the short stint of antibiotics prescribed in March 2010 had proven entirely ineffective (as demonstrated by the oozing green liquid coming out of Mr. Seiver's heel). Indeed, despite Mr. Seiver's desperate plea to go to the hospital, neither Nurse Lacey nor Dr. Townsend even offered to allow Mr. Seiver to see Dr. Townsend in person. [Please see Exhibits "A" through "G" attached hereto].

Therefore, Plaintiff respectfully submits that genuine issues of fact remain with regard to whether the Defendants exhibited deliberate indifference toward Mitchell Seiver. See Phillips v. Roane County, et al., 534 F. 3d 531, 544 (6th Cir. 2008), Terrance v. Northville Reg'l Psychiatric Hosp., 286 F.3d 834, 843 (6th Cir. 2002). Certainly, Plaintiff has stated a valid claim under 42 U.S.C. § 1983 for purposes of Rule 12(b)(6) of the Federal Rules of Civil Procedure.

### III. Defendants' Arguments Under the Supreme Court's Holding in Minneci v. Pollard

Defendants argue that Plaintiff should have presented his case under Tennessee state law claims and that the Defendants should be immune from the suit herein under the Supreme Court's holding in [Minneci v. Pollard, 132 S.Ct. 617 (2012)].

Specifically, Defendants attempt to draw a connection between the Court's holding in Minneci, that a Bivens action would not lie against the employees of a private prison for violation of an inmate's 8th Amendment rights when applicable state law offered a similar and adequate remedy, and the case herein (which the Defendants concede is presented under 42 U.S.C. § 1983). [See documents 96 and 97].

Of course, a Bivens action is a suit directly presented under the Constitution of the United States. Such a suit is effectively based on common law principles that the Courts can permit a common law suit where no other reasonable or adequate remedy is available under state or federal law.[8] In that vein, the Court held that "[t]he existence of that alternative here constitutes a "convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages." [Minneci v. Pollard, 132 S.Ct. 617 (2012)].

---

[8] The Court uses the phrase "alternative, existing process." Further, in his concurring opinion, Justice Scalia opined that "Bivens is 'a relic of the heady days in which this Court assumed common-law powers to create causes of action' by constitutional implication. . . . We have abandoned that power in the statutory field . . . and we should do the same in the constitutional field, where (presumably) an imagined 'implication' cannot even be repudiated by Congress."

Since 42 U.S.C. § 1983 is the congressionally codified avenue for plaintiffs who have had their constitutional rights violated to pursue legal actions for such violations, the fact that Mr. Seiver (and now Mr. Gary Seiber) has made claims under 42 U.S.C. § 1983 is entirely consistent with the Court's holding in Minneci. Therefore, Defendants could correctly rely upon the Court's holding in Minneci only if (1) 42 U.S.C. § 1983 did not exist, and (2) specific state law or administrative remedies were available to the Plaintiff. [See Id.]

Defendants attempt to stretch the implications of the Court's holding in Minneci to the present case by relying on the Supreme Court's holding in Butz v. Economou. However, in Butz, the Court was dealing with a situation where the plaintiff was an aggrieved "futures commission merchant" who claimed that the Department of Agriculture, and various other federal employees, improperly prosecuted him in an administrative proceeding because of his "criticism of that agency." [Butz v. Economou, 438 U.S. 478 (1978)].

Effectively, the plaintiff in Butz presented a Bivens action against the Department and several specific individuals. [See Id.]. The Defendants in that case attempted to argue that they were entirely immune from suit. It was in that context that the Court held it "untenable to draw a distinction for purposes of immunity law between suits against state officials under § 1983 and suits brought directly under the Constitution against federal officials." [Id. at 504]. Moreover, the Court went on to hold that it wanted to prevent "a system in which the Bill of Rights monitors more closely the conduct of state officials than it does of federal officials." [Id.]

Plaintiff submits that a fair reading of the Court's opinion in Butz effectively reflects an enlarged right of action against federal officials (and a smaller bastion of immunity for said federal officials) under the Bivens doctrine. More simply, the Court in Butz brought a Bivens action up to the level of a § 1983 action in suits against federal officials. Therefore, it is

counterintuitive for Defendants to argue that the Plaintiff herein has a reduced (or eliminated) a right of action against the Defendants in an actual § 1983 action.

## CONCLUSION:

WHEREFORE, Plaintiff respectfully submits that are multiple issues of material fact that require a Jury trial in this cause and requests that this Honorable Court to deny the Defendants' Motion for Summary Judgment.

**Respectfully submitted this 19th day of October 2012.**

            **PLAINTIFF**

         **By:** **s/Daniel R. Goodge**
            **Daniel R. Goodge (BPR # 023647)**
            **Counsel for Plaintiff, Mitchell Seiver**
            **CANTRELL, CANTRELL & ASSOC.**
            **P. O. Box 299**
            **Clinton, TN 37716**
            **Phone: (865) 457-9100**
            **Fax: (865) 463-7881**
            **dgoodge@cantrellcantrell.com**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. Mail. Parties may access this filing through the Court's electronic filing system.

Respectfully submitted this 19th day of October, 2012.

By: <u>s/Daniel R. Goodge</u>
Daniel R. Goodge (BPR # 023647)
Counsel for Plaintiff, Gary Steve Seiber
CANTRELL, CANTRELL & ASSOC.
P. O. Box 299
Clinton, TN 37716
Phone: (865) 457-9100
Fax: (865) 463-7881
dgoodge@cantrellcantrell.com