UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

GARY STEVE SEIBER, *executor*,      )
MITCHELL SEIVER,                    )
                                    )
          Plaintiff,                )
                                    )
v.                                  )      No.:  3:11-CV-108
                                    )            (VARLAN/SHIRLEY)
MARY LACEY,                         )
                                    )
          Defendant.                )

## MEMORANDUM OPINION AND ORDER

This civil action is before the Court on the Motion for Summary Judgment on

Behalf of Defendants Charles Townsend, M.D. and Mary Lacey, L.P.N. [Doc. 96].[1]

Plaintiff filed both a preliminary response [Docs. 99, 100] and a final response [Docs.

109, 110]. Mary Lacey ("Nurse Lacey") did not file a reply, and the time for doing so

has passed. *See* E.D. Tenn. L.R. 7.1, 7.2. The Court has thoroughly reviewed and

considered all of the relevant filings and, for the reasons set forth below, will deny the

motion.

## I.     Relevant Facts and Background

Mitchell Seiver was incarcerated as a pretrial detainee in the Anderson County

Detention Facility beginning on September 22, 2009. Nurse Lacey first saw Mr. Seiver

---

[1] While the motion was filed on behalf of Dr. Charles Townsend and Nurse Mary Lacey,
Dr. Townsend since has been voluntarily dismissed as a defendant in this case [Doc. 116].
Therefore, the Court will address the motion, facts, and argument relevant thereto, only as they
relate to the determination of summary judgment with regard to Mary Lacey.

pursuant to a "Medical Request" form submitted by Mr. Seiver on September 23, 2009. Nurse Lacey conducted a physical examination of Mr. Seiver. At that time, Nurse Lacey noted that Mr. Seiver had a growth on his right foot, which looked like "a dried-up wart . . . that protruded from the skin and was approximately the size of a golf ball" [Doc. 110-1, p. 5]. The golf-ball-sized growth on Mr. Seiver's foot was firm and red. Mr. Seiver also had a lesion on his groin, which he described as a "cat paw." Nurse Lacey did not view the growth on the groin on September 23, 2009. Mr. Seiver related to Nurse Lacey that the growth on his groin had transferred from the growth on his foot. Nurse Lacey believed that the growth on Mr. Seiver's foot looked like a hemangioma.

On October 2, 2009, Nurse Lacey conducted a "physical" of Mr. Seiver, as was to be conducted of all inmates within fourteen days of the start of an inmate's incarceration at the Anderson County Detention Facility. Nurse Lacey prepared a "Medical History" form and did not include any references to the growths on Mr. Seiver's foot and groin area. Nurse Lacey "most likely" did not examine either growth on that date, and she answered "no" to the question about skin history on the form. Nurse Lacey testified at her deposition that she did not feel that there was a reason to check on the growths during the physical examination.

On January 21, 2010, Mr. Seiver submitted a "Sick Call Request," asking for an evaluation of a seed wart on his foot and a kernel in his leg. The response from Nurse Rebecca Slagle was that the doctor was aware, but that there were no orders from the doctor to do anything in response to these complaints. There is no medical record or

2

treatment note indicating that Mr. Seiver was seen by any nurse or doctor in January or February 2010. At this time, Nurse Lacey was at the Anderson County Detention Facility approximately three days per week and was supposed to write daily nursing notes if treating a patient.

On April 22, 2010, Nurse Lacey received an "Inmate Request Form," on which Mr. Seiver stated:

> I need to talk to someone in the administration about a wart on my foot it is leaking green fluid out and is very painful. I have had it for the last 6 months, and it keeps getting worse and bigger. It also bleeds heavily when I walk on it. I desperately need to go to the hospital to have it removed before it gets worse. Please I have talked to several officers about it. The pain shoots all up my leg to my hip constantly. Please let me get some help. Please and thank you.

[Doc. 110-7]. Nurse Lacey spoke with a corrections facility medical provider, but was given no new orders about care and treatment. She responded: "Mr. Seiber, we have treated this lesion on your heel and the doctor has seen you to check this also. I will speak . . . the doctor again to see if he wants a different plan of care" [*Id.*].[2] Nurse Lacey continued, "I spoke to the doctor and there isn't much of anything else we can do since it is not a life threatening situation" [*Id.*]. Nurse Lacey admitted at her deposition that this communication made her aware that, according to Mr. Seiver, the growth on his foot was very painful, was getting worse, was getting bigger, and that it bled heavily when he

---

[2] During March 2010, Dr. Capparelli, a corrections facility medical provider, ordered a five-day term of the antibiotic, Bactrim. No later medical notes indicate that anyone evaluated Mr. Seiver to see if the Bactrim had been effective as a treatment for either growth. On March 20, 2010, Nurse Practitioner Colley wrote a note that Mr. Seiver was complaining about a "wart on [his] foot," and noted that the wart should be removed when he was no longer in jail and that dressing changes should continue [Doc. 110-6].

3

walked.  She also knew that he claimed to desperately need to go to the hospital.  She testified, however, that she did not feel that he needed to go to the hospital, and that Dr. Charles Townsend agreed, despite the fact that it is unclear from the record if Dr. Townsend had ever seen Mr. Seiver up to that point.

On May 10, 2010, Mr. Seiver submitted an "Inmate Request Form," stating, "I desperately need to use the desk phone to contact my lawyer Rodger Miller because he is suppose to see about get me medical help on my foot . . . ." [Doc. 110-9].  The request was denied, with the corrections officer responding that if he was in need of medical attention, he should submit a sick call request form.  On May 12, 2010, Mr. Seiver submitted such a form, stating, "I have a wart the size of a golf ball on my right foot and shooting pains . . . and is bleeding badly" [Doc. 110-10].  Nurse Lacey responded that he would see Dr. Townsend on May 14, 2010.

On May 14, 2010, Dr. Townsend examined Mr. Seiver and diagnosed him with a granuloma, which needed to be removed.  As Anderson County Detention Facility did not have the capabilities necessary for Dr. Townsend to perform the procedure, Dr. Townsend wrote a referral to a surgeon to remove Dr. Seiver's foot growth.  Nurse Lacey testified at her deposition and swore in her affidavit that she took the order to the detention center's medical officer, but she could not remember to which medical officer she took the order, the date on which she took the order to an officer, and she could not cite to any documentation to support her claim.  During her deposition, when asked if she had any recollection of what happened on May 14, 2010, regarding her relaying the

4

surgery referral to the detention center, she testified, "No, sir, I just know they were informed" [Doc. 110-1, p. 32]. When questioned about her actions to follow up on the surgery referral, after Mr. Seiver was not scheduled to see a surgeon pursuant to her apparent instructions, Nurse Lacey testified that she did not remember when she became aware that Mr. Seiver had not been taken to a podiatrist, but that she knew she did become aware of it. Nurse Lacey specified that she would have become aware of this failure whenever her next shift was, and she testified that she asked the detention center medical officer about it. Nurse Lacey did not remember which medical officer she asked or what the medical officer's response was, and when asked what she did when she found out that Mr. Seiver had not been taken to a podiatrist, she testified, "I just, I don't guess I did much of anything" [*Id.*, p. 15]. Nurse Lacey said she let Dr. Townsend know the next time she spoke to him.

Anderson County Detention Facility Officers Danyelle McFee, Avery Johnson, and Larry Davidson all testified that Nurse Lacey failed to inform them of Dr. Townsend's referral of May 14, 2010, and that she also failed to provide them a copy of his order containing that referral. Those same officers testified that, had they been made aware of the referral for surgery, they would have made sure it was acted upon. Moreover, in the answers to plaintiff's interrogatories propounded by defendant Anderson County, now dismissed, Anderson County responded, in part:

> Mr. Seiber was seen by Dr. Townend on 05/14/2010, and it appears the order was not acted upon by Advanced Correctional Healthcare, Inc. staff. The medical record also shows that Mr. Seiber was seen by Dr. Townesend

5

on 05/24/2010 and no transport was recommended. A second entry dated 07/29/2010 (date not clear) indicates that surgery is needed and dressing change. A third Physician Order Form, dated 06/25/2010 shows a verbal order for Keflex and on 07/29/2010, Dr. Townsend again indicates the need for surgery to remove the mass on his foot. After Dr. Townsend issued the orders dated 07/29/2010, Mr. Seiber was sent to and placed under the care of Dr. Christiansen on 08/09/2010.

[Doc. 110-12, p. 4]. The medical and detention center files do not appear to note that either Dr. Townsend or Nurse Lacey followed up with the detention center employees about the failure to enact the surgery referral. Dr. Townsend did not refer Mr. Seiver to either an oncologist or a dermatologist.

On May 24, 2010, Dr. Townsend gave a voice order for Mr. Seiver's foot growth to be cleaned and to have his dressings changed daily. The Affidavit of Dr. Townsend indicates that on or about May 27, 2010, Dr. Townsend again examined Mr. Seiver, and he determined that Mr. Seiver still needed surgery. Nurse Lacey testified that she changed Mr. Seiver's dressing and that, on June 18, 2010, she notified a lieutenant at the Anderson County Detention Facility that, "if [Mr. Seiver] is going to be a long timer we need to go ahead and send him to a surgeon. That place stinks + drains something awful" [Doc. 110-1, p. 31]. Both Officer McFee and Officer Janet Lynn Poluga Hensley testified that they perceived Nurse Lacey as believing that all inmates faked their illnesses and injuries.

On June 25, 2010, Dr. Townsend prescribed Mr. Seiver a fourteen-day trial of Keflex via voice order; however, neither he nor Nurse Lacey followed up to see how the antibiotics affected the growths. On July 22, 2010, Nurse Lacey evaluated Mr. Seiver,

6

assessing that he had an infection and noting the granuloma on his foot and swelling in his groin. Dr. Townsend prescribed another antibiotic, Erythromycin, as well as Ibuprofen. On July 29, 2010, Dr. Townsend re-wrote an order of referral for Mr. Seiver to see a surgeon for removal of the growth on his foot.

Sometime between August 5, 2010, and August 9, 2010, the detention center staff sent Mr. Seiver to see Brian Christiansen, DPM, to have the foot growth removed. Dr. Christiansen biopsied the growth, and Mr. Seiver was diagnosed with malignant melanoma. After Dr. Christiansen informed Nurse Lacey that Mr. Seiver had Stage V malignant melanoma, both Nurse Lacey and Dr. Townsend wrote letters to the detention center, indicating that Dr. Christiansen recommended that Mr. Seiver be seen by an oncologist for treatment. However, because cancer treatment is extremely expensive, Nurse Lacey and Dr. Townsend both recommended that Mr. Seiver be released from custody.

## II.     Standard of Review

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of establishing that no genuine issues of material fact exist. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 n.2 (1986); *Moore v. Phillip Morris Cos.*, 8 F.3d 335, 339 (6th Cir. 1993). All facts and all inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. *Matsushita Elec.*

7

*Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Burchett v. Kiefer*, 301 F.3d 937, 942 (6th Cir. 2002). "Once the moving party presents evidence sufficient to support a motion under Rule 56, the non-moving party is not entitled to a trial merely on the basis of allegations." *Curtis Through Curtis v. Universal Match Corp., Inc.*, 778 F. Supp. 1421, 1423 (E.D. Tenn. 1991) (citing *Catrett*, 477 U.S. at 317). To establish a genuine issue as to the existence of a particular element, the non-moving party must point to evidence in the record upon which a reasonable finder of fact could find in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. *Id.*

The Court's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper question for the factfinder. *Anderson*, 477 U.S. at 250. The Court does not weigh the evidence or determine the truth of the matter. *Id.* at 249. Nor does the Court search the record "to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir. 1989). Thus, "the inquiry performed is the threshold inquiry of determining whether there is a need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

8

## III. Analysis

Nurse Lacey moves the Court for an order summary judgment in her favor, because she provided care and treatment to Mr. Seiver, and any complaint about her treatment of Mr. Seiver is a claim of inadequate medical treatment, making it an invalid cause of action under § 1983. Alternatively, Nurse Lacey argues that she cannot be held liable under § 1983, because she is a private employee. The Court will first address the liability of private employees and will then move on to address the merits of the motion.

### A. Liability for Private Employees

Nurse Lacey argues that the Supreme Court's recent opinion in *Minneci v. Pollard*, 132 S. Ct. 617 (2012), dictates dismissal of plaintiff's claim against her. In *Minneci*, the Supreme Court held that an inmate may not bring an Eighth Amendment *Bivens* claim for inadequate medical care against private employees of a privately-operated federal prison. While relatively few district courts have addressed the application of the *Minneci* holding to claims against private employees in a state jail or prison, this Court has done so. In *Paulk v. Sevier County, Tennessee*, No. 3:12-CV-89, 2012 WL 5997948, at *5-6 (E.D. Tenn. Nov. 30, 2012), the Court addressed and rejected the exact argument before it now.

In *Paulk*, this Court reviewed a line of *Bivens* cases, as well as the Supreme Court's holding in *Minneci*. 2012 WL 5997948, at *5-6. As here, in *Paulk*, the plaintiffs brought not a *Bivens* action against the private medical contractors, but a cause of action under § 1983, as the decedent in that case, as here, was a state inmate in a state-operated

9

facility that contracted its medical services to the defendants. *Id.* at \*6. As the Court noted that the *Minneci* decision did not explicitly or implicitly indicate that it was meant to affect § 1983 cases, the Court declined to extend the holding in *Minneci* to the case of an action brought under § 1983 by a prisoner housed in a state-run facility. *Id.*; *see also Green v. Wexford Health Sources*, No. 12-C-50130, 2013 WL 139883, at \*5 (N.D. Ill. Jan. 10, 2013) (*Minneci* does not bar plaintiff's claim against § 1983 defendant); *Centaur v. Prisoner Transp. Servs. of Am.*, No. 1:12-CV-2626-TWT-LTW, 2012 WL 6803978, at \*4 n.4 (N.D. Ga. Nov. 8, 2012) ("As this is an action under § 1983 that does not involve federal officials or prisons, *Minneci* arguably does not apply."); *Winchester v. Marketti*, No. 11-CV-9224, 2012 WL 2076375, at \*2-3 (N.D. Ill. June 8, 2012) (refusing to extend *Minneci* to "block § 1983 actions against private employees working in state prisons"); *Alajemba v. Rutherford Cnty. Adult Det. Ctr.*, No. 3:11-0472, 2012 WL 1514878, at \*4 (M.D. Tenn. May 1, 2012) (stating it is "unclear" whether *Minneci* would be extended to those asserting claims against private physicians under state contract and refusing to so extend it).

Accordingly, consistent with the Court's earlier precedent and with the rulings of other district courts having addressed this issue, the Court rejects Nurse Lacey's argument that *Minneci* dictates that she cannot be held liable pursuant to § 1983 because she is a private employee and because the cause of action against her is grounded in state law.

10

**B.     Deliberate Indifference**

To state a cognizable claim against an individual under § 1983, "a plaintiff must set forth facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under color of state law." *Heyerman v. Cnty. of Calhoun*, 680 F.3d 642, 647 (6th Cir. 2012) (quoting *Sigley v. City of Parma Heights,* 437 F.3d 527, 533 (6th Cir. 2006)). "A physician who contracts to provide medical services to prison inmates . . . acts under color of state law for the purposes of § 1983." *McCullum v. Tepe*, 693 F.3d 696, 700 (6th Cir. 2012) (citing *West v. Atkins*, 487 U.S. 42, 54 (1988)). The Supreme Court has held that "deliberate indifference" to a prisoner's serious illness or injury states a cause of action under § 1983 as a violation of the prisoner's rights under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *see also Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004) (noting the Eighth Amendment forbids prison officials from "unnecessarily and wantonly inflicting pain" and citing to *Estelle*). A constitutional claim for deliberate indifference contains both an objective and subjective component. *Dominguez v. Corr. Med. Serv.*, 555 F.3d 543, 550 (6th Cir. 2009). The objective component requires a plaintiff to show the existence of a "sufficiently serious" medical need, *Farmer v. Brennan*, 511 U.S. 825, 834 (1994), while the subjective component requires a plaintiff to "allege facts which, if true would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk," *Dominguez*, 555

11

F.3d at 550 (quoting *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001)). "Knowledge of the asserted serious needs or of circumstances indicating the existence of such needs, is essential to a finding of deliberate indifference." *Horn v. Madison Cnty. Fiscal Ct.*, 22 F.3d 653, 660 (6th Cir. 1994).

Nurse Lacey argues that courts should distinguish between cases where plaintiffs allege inadequate medical treatment and cases where plaintiffs allege a complete denial of medical treatment. Relying upon the Affidavit of Nurse Lacey, the Affidavit of Dr. Townsend, the Anderson County Detention Facility medical records, and the nursing staff communications log, Nurse Lacey submits that "it is clear that . . . [she] provided care and treatment to Mr. Seiver while he was an inmate [at the] Anderson County Detention Facility" [Doc. 97, p. 8]. Nurse Lacey asserts that plaintiff's disagreement with the treatment plan that was put in place is a complaint about the adequacy of the treatment and does not rise to the level necessary to support a cause of action for deliberate indifference.

Nurse Lacey argues that, each time she received a written complaint about his condition from Mr. Seiver, she either contacted the detention center medical providers or scheduled a doctor's appointment for Mr. Seiver. She claims that she properly implemented the detention center medical providers' treatment plan of administering medication, changing Mr. Seiver's dressings, and providing Dr. Townsend's orders that Mr. Seiver see a surgeon to the Anderson County Detention Facility staff. Last, Nurse

Lacey argues that, as a licensed practical nurse, she is not qualified to make medical diagnoses or to change an inmate's treatment plan.

## 1. Objective

As to the objective component, a plaintiff must establish that his medical needs were "sufficiently serious" to warrant the requisite medical attention. *Comstock*, 273 F.3d at 703. The "prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." *Farmer*, 511 U.S. at 834 (internal quotations and citation omitted). Here, Mr. Seiver's medical needs included a golf-ball-sized growth on his foot, which oozed colored fluid and bled heavily when he walked, a growth on his groin, and constant shooting pain from his leg to his hip. As determined after his eventual examination by Dr. Christiansen, Mr. Seiver had Stage V malignant melanoma, which affected his mobility and caused him great pain. Nurse Lacey's motion for summary judgment does not argue that Mr. Seiver's medical needs were not sufficiently serious to warrant medical attention. She instead argues that plaintiff's complaints are ones of inadequate medical treatment and that there is no genuine issue of material fact demonstrating that she was deliberately indifferent to Mr. Seiver's medical condition.

Accordingly, for purposes of this motion, the Court finds that Mr. Seiver's medical needs were sufficiently serious to meet the subjective component of his deliberate indifference claim.

13

## 2. Subjective

Turning to the subjective component, plaintiff must establish that Nurse Lacey had subjective knowledge of the substantial risk to Mr. Seiver's health and that she then disregarded it. An official may "not escape liability if the evidence showed that [he] merely refused to verify the underlying facts that he strongly suspected to be true, or declined to confirm inferences of risks he strongly suspected to exist." *Farmer*, 511 U.S. at 843 n.8. "Whether a[n] . . . official has the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inferences from circumstantial evidence." *Id.* at 842.

Nurse Lacey was aware of the growths on both Mr. Seiver's foot and his groin as early as September 23, 2009, when she examined the foot growth and noted that it was the size of a golf ball. Mr. Seiver also informed her at that time that he believed the two growths to be related to one another. On October 2, 2009, Nurse Lacey conducted a "physical" examination of Mr. Seiver, but she chose not to re-examine his foot growth or to mention either growth on the medical history form. On January 21, 2010, Mr. Seiver submitted a sick call request related to his foot growth, and on April 22, 2010, Mr. Seiver submitted an inmate request form indicating that the growth was bleeding heavily, getting larger and more painful, and seeping green fluid. He further indicated that he had constant pain shooting up his leg to his hip and that he needed to go to the hospital immediately to have the growth removed. Nurse Lacey received this request and information, as she was the one who drafted the response to Mr. Seiver, indicating that

14

there was nothing else they could do for him because it was "not a life threatening situation" [Doc. 110-7]. On May 12, 2010, Mr. Seiver submitted another sick call request, again indicating that he had a golf-ball-sized growth on his foot, that he was experiencing shooting pains, and that the growth was bleeding badly. Throughout this time period and the duration of Mr. Seiver's incarceration, as he repeatedly complained of his medical needs and the growth on his foot, Nurse Lacey was aware of his ailments. Moreover, from the information contained in the submission of April 22, 2010, Nurse Lacey was certainly made aware of the worsening condition and the seriousness of Mr. Seiver's pain and other symptoms related to his growths.

Nurse Lacey responded to Mr. Seiver's May 12, 2010 complaint by scheduling a time for Dr. Townsend to come and see him, which he did on May 14, 2010. After this examination, wherein Dr. Townsend incorrectly diagnosed the foot growth as a granuloma and ordered that Mr. Seiver be taken to a surgeon for its removal, Nurse Lacey argues that she submitted the referral order to the detention center staff, thus doing all that was required of her at that time. However, at her deposition, Nurse Lacey could remember very little about the circumstances surrounding her allegedly informing the medical center staff of the surgery referral. Moreover, Anderson County Detention Facility Officers McFee, Johnson, and Davidson all testified that Nurse Lacey did not inform them of the May 14, 2010 referral and that they would have ensured that Mr. Seiver saw the surgeon had they been aware of the referral order. Additionally, the evidence of record indicates that Nurse Lacey became aware that Mr. Seiver was not

15

scheduled to see a surgeon and had not been transported for such an appointment, but she did little to nothing in response to her awareness of this failure.

Accordingly, the Court finds that genuine issues of material fact exist as to whether Nurse Lacey informed the detention center medical staff of the referral for surgery and whether she followed up on the failure to enact the referral order. "[L]ess flagrant conduct may . . . constitute deliberate indifference in medical mistreatment cases." *Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834, 843 (6th Cir. 2002) (citing *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999) (deliberate indifference may be established by showing grossly inadequate care, as well as a decision to take an easier but less efficacious course of treatment)). Nurse Lacey saw Mr. Seiver on several occasions over the period of more than two and one half months between when Dr. Townsend first ordered the surgery referral and his later referral order of July 29, 2010. During that time, Nurse Lacey was aware of the severity of Mr. Seiver's symptoms, noting in June 2010 that his growth smelled foul and was draining liquid, yet the record is unclear as to any attempts to follow through with the initial surgery referral for Mr. Seiver.

In sum, Nurse Lacey's knowledge of Mr. Seiver's serious condition may be viewed as a subjective awareness of potential risks, and issues of material fact exist as to whether Nurse Lacey's conduct reflected deliberate indifference to Mr. Seiver's serious medical needs and caused grossly inadequate medical care in violation of the Eighth Amendment.

16

**IV.    Conclusion**

For the reasons stated herein, the Court hereby **DENIES** the Motion for Summary Judgment on Behalf of Defendants Charles Townsend, M.D. and Mary Lacey, L.P.N. [Doc. 96] as it relates to Nurse Lacey.  In light of his earlier dismissal from this case, the Court **DENIES as moot** the motion as to Dr. Townsend.

IT IS SO ORDERED.


s/ Thomas A. Varlan
CHIEF UNITED STATES DISTRICT JUDGE