UNITED STATE DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

GARY STEVE SEIBER, )
 )
    Plaintiff, )
 )    No. 3:11-CV-108
 )    (VARLAN/SHIRLEY)
V. )
 )
ANDERSON COUNTY, TENN., *et al.*, )
 )
    Defendants. )

### MEMORANDUM AND ORDER

This case is before the undersigned pursuant to 28 U.S.C. § 636, the Rules of this Court, and Standing Order 13-02. Now before the Court is Plaintiff's Motion for Sanctions Due to Spoliation of Evidence. [Doc. 153]. For the reasons stated herein, it will be **DENIED**.

**I.    BACKGROUND**

The Plaintiff presents a claim for deliberate indifference to medical needs pursuant to 28 U.S.C. § 1983. The decedent Mitchell Seiver was an inmate at the Anderson County Detention Center ("ACDC") from September 22, 2009, until October 2010. Defendant Mary Lacey ("Ms. Lacey") is a nurse who treated the decedent at the ACDC.

A detailed factual background of this case can be found in Seiber v. Lacey, 2013 WL 4046313 (E.D. Tenn. Aug. 8, 2013). For purposes of the instant motion, the pertinent facts can be summarized as follows:

The medical staff − specifically, nurses at the ACDC − used notebooks to convey information from shift to shift. In his deposition Lieutenant Richard Parker, of the Anderson

County Sheriff's Department, stated that Officer Hensley informed him that these log books existed, and he asked that the books be retrieved. [Doc. 153-4 at 3]. Officer Hensley went to look for the books, and she found one book on the filing cabinet where the books had been kept in the past. [Id.]. Lt. Parker testified that he then went to look for the books, and he also found that only one book was on the cabinet. [Id.]. The book located by Officer Hensley and Lt. Parker is referred to as "Communication Log #3."

On January 20, 2012, Ms. Lacey served her answers to Plaintiff's First Set of Interrogatories and Requests for Production. [Doc. 153-3]. Ms. Lacey did not mention the communication notebooks in her answers to the interrogatories and requests for production, nor did she mention them in her initial disclosures. Anderson County produced Communication Log #3, the composition notebook located by Lt. Parker and Officer Hensley, to the Plaintiff in September 2012. [See Doc. 159-1, 159-2]. On September 19, 2012, the parties requested a status conference to address the production of Communication Log #3, [see Doc. 92], and the Court conducted a telephonic status conference on September 25, 2012, [see Doc. 95]. The parties agree that Communication Log #1 and Communication Log #2 existed at some time and that these log books covered a period of time prior to May 2010.

In her deposition on October 18, 2012, Ms. Lacey confirmed the existence of these books and stated that she would go buy the books at the local Dollar General store. [Doc. 153-1 at 8]. She stated that she always tried to buy a book with a specific type of backing so that the nurses could tell if a page was missing. [Id. at 8]. Ms. Lacey testified that the books were still in existence when she left her employment at the ACDC. [Id. at 11].

2

On July 8, 2013, the Plaintiff filed his Motion for Sanctions Due to Spoliation of Evidence [Doc. 153]. Ms. Lacey responded in opposition [Doc. 159], and on August 28, 2013, the Court heard the parties' oral arguments on this issue.

## II.  POSITIONS OF THE PARTIES

The Plaintiff maintains that Ms. Lacey should have produced Communication Log #3, when she was asked to produce all medical records from Mr. Sevier's stay at the ACDC. Plaintiff argues that he would have never known that Communication Log #3 existed if Anderson County had not produced it. Plaintiff argues that Ms. Lacey herself confirms that two other communication logs existed. Plaintiff argues that the evidence presented indicates that Ms. Lacey intentionally destroyed, intentionally withheld, or negligently misplaced Communication Log #1 and Communication Log #2. [Doc. 153].

Ms. Lacey responds that Communication Logs #1-3 were kept on an unsecured bookshelf in a shared office and were not the property of the nursing staff. Ms. Lacey notes that Communication Log #3 includes entries from May 14, 2010 through April 25, 2011. Ms. Lacey asserts that once a log book is filled and a few months have passed, "facilities" destroy such logs. Ms. Lacey states that she did not disclose or produce the communication logs in discovery because they were not in her possession or control at the time she made her disclosures since she was no longer employed by Advanced Correctional Healthcare, Inc., at the ACDC. Ms. Lacey maintains that, even though the whereabouts of Communication Log #1 and Communication Log #2 are not known, she did not destroy or withhold them, nor has Plaintiff shown that Ms. Lacey destroyed or withheld them. Moreover, Ms. Lacey argues that Plaintiff has not shown that she

3

possessed requisite culpable state of mind to justify a sanction for spoliation of evidence. [Doc. 159].

In reply, Plaintiff reiterates that the evidence before the Court supports a finding that Ms. Lacey destroyed or intentionally and/or knowingly misplaced Communication Log #1 and Communication Log #2. The Plaintiff moves the Court to issue sanctions either: (1) denying the Defendant the ability to present a defense to the Plaintiff's Complaint; or (2) instructing the jury that Communication Log #1 and Communication Log #2 would have contained information adverse to the interests of Ms. Lacey. [Doc. 173].

### III. ANALYSIS

The Court of Appeals for the Sixth Circuit has clarified that a federal court in the Sixth Circuit should apply federal law in determining whether spoliation sanctions are appropriate. See Adkins v. Wolever, 554 F.3d 650, 652 (6th Cir. 2009). Under applicable federal law, the party seeking adverse inference must establish that: (1) the party with control over the evidence had an obligation to preserve it at the time it was destroyed; (2) the evidence destroyed was destroyed with a culpable state of mind; and (3) the destroyed evidence was "relevant to the party's claim or defense." Beavan v. United States, 622 F.3d 540, 553 (6th Cir. 2010).

The Court of Appeals has implied that these same elements are applied in evaluating spoliation sanctions, other than requests for adverse inferences. Id. at 554. The district court may "impose many different kinds of sanctions for spoliated evidence, including dismissing a case, granting summary judgment, or instructing a jury that it may infer a fact based on lost or destroyed evidence." Id. (quoting Adkins, 554 F.3d at 653). A party's failure to preserve relevant evidence calls upon the court to craft an appropriate sanction considering where the behavior falls "along a continuum of fault-ranging from innocence through the degrees of

4

negligence to intentionality." Id. at 653 (quoting Welsh v. United States, 844 F.2d 1239, 1246 (6th Cir. 1988)).

In the instant case, as an initial matter, the Plaintiff has failed to clearly establish the key overriding facts in all of the above Beavan elements – *i.e.* that the evidence *was* destroyed or *when* the evidence was destroyed.

Further, the Court also finds that the Plaintiff has failed to demonstrate element of control over the evidence. In her deposition, Ms. Lacey testified:

> Q: Who had access to these books?
>
> A: Anybody that went in medical.
>
> Q: For sure all the Advanced Correctional Health Care employees?
>
> A: Exactly.
> Q: Which jailers would have had access?
>
> A: There shouldn't have been any jailer to be looking at these books. No one should have been looking at these books except the nurses, truthfully. But they were not locked up or hidden or told that they were off premises.
>
> . . . .
>
> Q: If a jailer had wanted to look at one of the books, is there anything that would have prevented them from being able to have access to it?
>
> A: No, sir.

[Doc. 153-1 at 9]. Ms. Lacey further testified:

> Q: Do you recall when you left if communications logs one and two were still in existence?
>
> A: They were there.
>
> Q: When you left?
>
> A: Yes, sir.

5

[Id. at 11].

The Court, in reviewing, the materials filed by the Plaintiff has found no testimony refuting Ms. Lacey's testimony on these points. At the hearing, the Court asked Plaintiff's counsel what evidence, if any, the Plaintiff had to undermine this sworn testimony. Counsel for the Plaintiff responded by stating that the evidence that is missing may have harmed Ms. Lacey's defense. [Doc. 179 at 7-8]. Even assuming, without finding, that the contents of Communication Log #1 and Communication Log #2 might harm Ms. Lacey's defense, the Court cannot find, based upon that possibility alone, that Ms. Lacey's sworn statements are untrue. Moreover, the fact that the books could not be found when Lt. Parker looked for them in August 2011, does not prove that Ms. Lacey had control over the books before she left her position at ACDC in June 2011. Finally, the Plaintiff's Memorandum cites the Court to page 166 of Ms. Lacey's deposition, as demonstrating her control over Communication Log #1 and Communication Log #2, see Doc. 154 at 8 (citing Lacey Dep. 166:8-14). The Court has thoroughly reviewed this testimony, and the Court finds that it does not allude to – let alone, establish – control over the log books.

Moreover, deposition testimony from other witnesses confirms that Ms. Lacey did not exercise control over the communication logs. For example, Dr. Edward Capparelli testified that staff with keys to the clinic, including ACDC staff, would have access to the area where the books were kept. [Doc. 159-5 at 6]. While Dr. Capparelli indicated that access would be limited to persons with keys to the clinic, he did not in any way indicate that Ms. Lacey was the sole person with access to the communication logs. [Id.]. Similarly, Lt. Parker testified that when he found Communication Log #3 it was sitting on top of a shelf, rather than being locked away with only limited access. [Doc. 159-4 at 2].

6

In addition, the Court finds that evidence that the nurses on staff at ACDC generally exercised ownership rights over the communication log books is too weak to establish that Ms. Lacey had control over Communication Log #1 and Communication Log #2. For example, Ms. Deborah Ash's testimony that both the ACDC and the clinical facility owned the books and medical notes, [Doc. 159-6],[1] does not compel the conclusion that Ms. Lacey had an ownership interest in the communication log books that was sufficient to input control based upon the ownership interest alone.

Based upon the foregoing, the Court finds that the Plaintiff has failed to demonstrate that Ms. Lacey had control over Communication Log #1 and Communication Log #2. In order to receive an adverse inference or other spoliation sanction, the party seeking the sanction must demonstrate that the party against whom the sanction is sought exercised control over the evidence that was destroyed. <u>Beavan</u>, 622 F.3d at 553. Stated differently, control is a prerequisite to awarding a spoliation sanction. The Court finds that the Plaintiff's request for sanctions for spoliation is not well-taken, because the Plaintiff has failed to demonstrate that Ms. Lacey had control over the evidence at issue.

With regard to the Plaintiff's allegations that Ms. Lacey did not comply with her initial disclosure obligations, the Court finds that, while disclosing the existence of these communication log books may have been best practice, Ms. Lacey's failure to produce the communication log books cannot be considered a violation of her obligations under Rule 26, because Ms. Lacey was only required to produce a copy of documents or tangible things that she

---

[1] Q: Who would be in charge of these books? The nurse or the facility?
A: If it's written in the facility — anything written in the facility is really the property of the facility. But for informal communication between the nurses, the nurses could destroy a book without getting permission of the jail. It is kind of like both people own it. But if there is something in communication book that is written about an inmate sometimes we turn those over to the jails because it is written in the jail and it's written about their people.

[Doc. 159-6 at 3].

7

had in her "possession, custody, or control." Fed. R. Civ. P. 26(a)(1)(ii). The Court finds that the Plaintiff has failed to show that the communication log books were in Ms. Lacey's custody or control at the time she made her initial disclosures.

Similarly, the Court cannot find a violation of Rule 34 because the Plaintiff has not shown that communication log books were in Ms. Lacey's custody or control at the time she responded to Plaintiff's requests for production. See Fed. R. Civ. P. 34(a)(1) (requiring that the documents be in the "responding party's possession, custody, or control.")

## IV. CONCLUSION

In sum, the Court finds that the Plaintiff's Motion for Sanctions Due to Spoliation of Evidence. **[Doc. 153]** is not well-taken, and it is **DENIED**.

**IT IS SO ORDERED**.

ENTER:

s/ C. Clifford Shirley, Jr.
United States Magistrate Judge

8

Case 3:11-cv-00108-TAV-CCS   Document 181   Filed 09/30/13   Page 8 of 8   PageID #: 2277